25 F.3d 1057
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Bettye Jo GUALTIER, Vincent L. Gualtier, Rita Ann Gualtier,
Lunda Gualtier, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 93-3366.
 United States Court of Appeals, Tenth Circuit.
 June 8, 1994.
 
 ORDER AND JUDGMENT[1]
 Before LOGAN, SETH, and BARRETT, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs, the widow and children of John Gualtier, deceased, appeal the dismissal of their personal injury and wrongful death claims brought under the Federal Tort Claims Act (FTCA). The district court determined that it was without subject matter jurisdiction to consider plaintiffs' claims because plaintiffs had failed to present them to the proper federal agency within two years of the dates of the incidents as required by the FTCA, 28 U.S.C. 2401(b).[2]
 
 
 3
 The facts in this case are not in serious dispute. Plaintiffs' decedent, John Gualtier, had a carotid endarterectomy at the Veterans Administration Hospital in Leavenworth, Kansas, on April 25, 1988. Prior to the surgery, Mr. Gualtier apparently had been under the care of his private physician, Dr. Gerald Petersen. Subsequent to the surgery, the physicians at the VA hospital prescribed Coumadin, a blood thinning medication, for Mr. Gualtier.
 
 
 4
 On May 3, 1988, Dr. Petersen placed Mr. Gualtier on Feldene, an anti-inflammatory drug. It is undisputed that simultaneous ingestion of the two types of drugs can result in spontaneous bleeding. None of the physicians involved informed Mr. Gualtier of the possible consequences of the incompatibility of the two drugs or monitored him for the presence of any side effects.
 
 
 5
 On May 31, 1988, Mr. Gualtier was transported from his home to St. Joseph Health Center in a coma. He was diagnosed with a subdural hematoma and treated with plasma, vitamin K, and an emergency procedure to alleviate the blood surrounding his brain. He was discharged on June 22, 1988, only to be readmitted on July 5, 1988, with a fever and pancytopenia.[3] Mr. Gualtier died of hepatitis and other complications on August 4, 1988.
 
 
 6
 Approximately one year after Mr. Gualtier's death, plaintiffs consulted an attorney regarding the possibility of a medical malpractice suit. Plaintiffs' concern at that time was concentrated on the care Mr. Gualtier had received at St. Joseph Health Center prior to his death. Plaintiffs' counsel consulted with a registered nurse, Julie Bogart, who routinely reviewed medical records for legal medical issues. In Ms. Bogart's opinion, the treatment and care given to Mr. Gualtier at St. Joseph was proper, although she did question Mr. Gualtier's high level of prothrombin time (bleeding time) when he was admitted with the subdural hematoma. She noted that although Dr. Petersen was aware that Mr. Gualtier was taking Coumadin when he prescribed the Feldene, he did not monitor Mr. Gualtier for side effects such as an elevated prothrombin time, nor did he communicate with the VA physicians treating Mr. Gualtier.
 
 
 7
 On April 19, 1990, plaintiffs' counsel requested Mr. Gualtier's records from the VA hospital. The VA hospital provided these records to counsel before the end of April 1990. In order to comply with the state statute of limitations, plaintiffs filed suit against Dr. Petersen in Missouri state court on May 3, 1990. In the state action, plaintiffs claimed that Dr. Petersen was negligent in not monitoring Mr. Gualtier's prothrombin time after prescribing the Feldene. They claimed that this negligence was the cause of Mr. Gualtier's subdural hematoma which necessitated the plasma treatment, resulting in the hepatitis and Mr. Gualtier's eventual death.
 
 
 8
 Also in May 1990, counsel sent the VA hospital records to Dr. James Hayden for review. On July 26, 1990, Dr. Hayden opined by letter that Mr. Gualtier's subdural hematoma resulted from spontaneous bleeding caused by combining Coumadin and Feldene. In Dr. Hayden's opinion, Dr. Petersen had been negligent in failing to properly monitor Mr. Gualtier after prescribing the Feldene. Dr. Hayden did not comment on the possibility that the VA hospital physicians also may have been negligent. However, in a deposition on October 12, 1990, Dr. Hayden suggested some possible negligence on the part of the VA physicians.
 
 
 9
 Plaintiffs filed a claim with the VA on May 18, 1992, asking for $1,000,000 in damages for personal injury and wrongful death. The VA denied plaintiffs' claim on November 13, 1992, finding that plaintiffs' claim was untimely. This suit followed.
 
 
 10
 Defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), claiming plaintiffs' suit was barred by the two-year statute of limitations imposed by the FTCA. See 2401(b). The district court granted defendant's motion, and plaintiffs appeal. We affirm.
 
 
 11
 "The determination of the district court's subject matter jurisdiction is a question of law which we review de novo." Bradley v. United States ex rel. Veterans Admin., 951 F.2d 268, 270 (10th Cir.1991). The statute of limitations provision of the FTCA constitutes a waiver of the government's sovereign immunity, is jurisdictional, and cannot be waived. Id. As a reviewing court, we should " 'not take it upon ourselves to extend the waiver beyond that which Congress intended.' " Id. (quoting United States v. Kubrick, 444 U.S. 111, 118 (1979)).
 
 
 12
 In its motion to dismiss, the government contended that plaintiffs' claim against the VA was filed outside the two year limitations period. In defense, plaintiffs claimed that the limitations period was tolled until Dr. Hayden's October 1990, deposition, when they were made aware that the VA physicians may have liability, and therefore, their claim, filed with the VA on May 18, 1992, was timely.
 
 
 13
 Plaintiffs' argument spawns the kind of statutory construction advised against by the Supreme Court in Kubrick. Although Congress did not provide guidance as to the meaning of "accrues," we can look to the Supreme Court's interpretation for the applicable standard to decide when a cause of action accrues for purposes of the limitations period. In Kubrick, the Court held that a cause of action under the FTCA accrues when "the plaintiff has discovered both his injury and its cause." 444 U.S. at 120. We note with particular emphasis that Kubrick did not extend this discovery rule to include knowledge that the injury was negligently inflicted. Id. at 123.
 
 
 14
 We agree with the district court that plaintiffs had the necessary medical records and were aware of both the injury to Mr. Gualtier and the cause of that injury by the end of April 1990. See Nemmers v. United States, 795 F.2d 628, 632 (7th Cir. 1986) (holding that obtaining medical records indicating that a certain act or omission caused an injury is sufficient to trigger the limitations period, requiring a plaintiff to investigate). The question thus becomes whether the running of the statute continued to be tolled until plaintiffs became aware, through Dr. Hayden's October 1990 deposition, that the government may be liable.
 
 
 15
 In Arvayo v. United States, 766 F.2d 1416 (10th Cir.1985), the court considered this issue in a case where a government doctor misdiagnosed a child's illness one day, and by the time the child was correctly diagnosed as suffering from meningitis the next day, he had suffered irreversible brain damage. Relying on Kubrick, we held that once the parents were aware of the injury and the misdiagnosis, they were under an affirmative duty to inquire, within the limitations' period, as to whether this misdiagnosis may have negligently caused the child's injury. Id. at 1421-22; see also Gustavson v. United States, 655 F.2d 1034, 1037 (10th Cir.1981) (holding that once a plaintiff is aware of the injury and its cause, he has an affirmative duty to "ascertain in what instances his condition should have been recognized"). Of particular significance to the facts of this case is our further holding in Gustavson that "[w]hether doctors who treated [plaintiff] had been negligent ... relates to the question of knowledge of malpractice, a matter irrelevant to the running of the statute of limitations." 655 F.2d at 1037.
 
 
 16
 It is clear and undisputed that plaintiffs were aware of Mr. Gualtier's injury and its cause in April 1990. They were also aware of the physicians involved in Mr. Gualtier's treatment from the time of his initial surgery in the VA hospital until his death. Their failure to diligently inquire into the possible negligence of the VA physicians, but instead to wait until they were passively informed by way of Dr. Hayden's deposition some seven months later, cannot be excused. See Bradley, 951 F.2d at 271 ("To allow Plaintiff to postpone accrual until he is passively informed by an outside source that his injury was negligently inflicted would serve to undermine the purpose of the limitations statute, that claims against the government require diligent presentation.") (footnote omitted). Once aware of the injury, its cause, and the possible liability of Dr. Petersen, plaintiffs had two years to affirmatively seek confirmation of the possible liability of the VA physicians and promptly file their claim. See Kubrick, 444 U.S. at 128 ("A plaintiff who remains ignorant through lack of diligence cannot be characterized as 'blameless.' "); Davis v. United States, 642 F.2d 328, 331 (9th Cir.1981) (holding that absent fraudulent concealment, it is plaintiff's burden to determine, within the statutory period, whom to sue), cert. denied, 455 U.S. 919 (1982).
 
 
 17
 Although, as plaintiffs assert, courts have held that mere speculation regarding the cause of an injury does not trigger the statute of limitations, see Brazzell v. United States, 788 F.2d 1352, 1356 (8th Cir.1986), here, the cause of Mr. Gualtier's injury, unmonitored treatment with two incompatible drugs, was beyond speculation by April 1990. "Once knowledge of the cause is available, any delay in pursuing the cause and developing a case rests with the would-be plaintiff." Nemmers, 795 F.2d 632. Accordingly, although cognizant of the unfortunate result of our decision in this case, we decline to hold that the statute of limitations is tolled until fault, as distinguished from injury and cause, has been determined.
 
 
 18
 Accordingly, the district court's determination that it had no subject matter jurisdiction to entertain plaintiffs' claims was correct. The judgment of dismissal of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Section 2401(b) of the FTCA provides in pertinent part:
 A tort against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues....
 
 
 [3]
 Pancytopenia is "a generalized decrease in all types of blood cell components." District Court Memorandum and Order at 3