**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 26 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANGELA DANITA RICE, sued as:
Markus Allec Rice, a minor, by and
through his mother and next friend,
Angela Danita Rice nfr Markus Allec
Rice,

              Plaintiff - Appellant,

    v.

UNITED STATES OF AMERICA,

              Defendant - Appellee.

No. 96-5175
N.D. Oklahoma
(D.C. No. 94-CV-264-K)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **BALDOCK**, and **EBEL**, Circuit Judges.

---

    Markus Allec Rice, by and through his mother and next friend Angela

Danita Rice, filed suit against the United States pursuant to the Federal Tort

Claims Act, 28 U.S.C. § 2671 et seq. ("FTCA"), alleging medical malpractice on

the part of health care providers at the Claremore Indian Hospital, a facility

operated by the United States. Following a bench trial, the district court granted

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

judgment in favor of the United States on the grounds that Ms. Rice failed to file Markus's administrative claim within the two-year statute of limitations provided by 28 U.S.C. § 2401(b). Ms. Rice appeals on Markus's behalf, and we affirm.

## I.

Angela Rice was determined to be pregnant on January 19, 1990, at Claremore Indian Hospital ("CIH"). Ms. Rice delivered at CIH by cesarean section on October 3, 1990, approximately three weeks past due. At the delivery, doctors noted meconium-stained amniotic fluid on newborn Markus.[1] They suctioned 4 cc of meconium-stained fluid from Markus's stomach and resuscitated him with oxygen blow and cutaneous stimulation. Although Markus appeared healthy during the morning and early afternoon following delivery, a nurse found Markus deeply cyanotic and making grunting respirations at 4 p.m. After performing emergency procedures, CIH transferred Markus to Saint Francis Hospital's Eastern Oklahoma Perinatal Center for more specialized treatment. While in route, Saint Francis personnel suctioned meconium from Markus's lungs.

At Saint Francis, doctors determined that Markus should be placed on extracorporeal membrane oxygenation ("ECMO"), a high-risk procedure reserved

---

[1]Meconium is the dark green material in the intestine of a full-term fetus. Dorland's Illustrated Medical Dictionary 998 (28th ed. 1994). Meconium is evacuated during the fetus's/newborn's first bowel movement.

for patients with at least an 80% chance of dying.[2]  Markus survived the procedure, but now suffers from persistent respiratory problems, developmental delays, and related medical problems.

On April 21, 1993, Ms. Rice filed an administrative claim on behalf of Markus with the Department of Health and Human Services, alleging medical malpractice on the part of CIH.  The Department of Health and Human Services denied Markus's claim on October 25, 1993.  Appellant's App. at 5.  On March 18, 1994, Ms. Rice filed suit on Markus's behalf in the district court, alleging that CIH acted negligently by failing to intervene timely in Ms. Rice's pregnancy, by failing to monitor adequately the condition of Ms. Rice and Markus, by failing to intubate Markus and properly suction the meconium from his lungs, by failing to monitor Markus following delivery, by failing to diagnose timely Markus's condition, and by failing to transport Markus to a better-equipped facility in a timely manner.  Id. at 2-3 (Complaint).

The United States moved for summary judgment, arguing that Ms. Rice had not filed Markus's administrative claim within two years after accrual as required by 28 U.S.C. § 2401(b).[3]  Finding that "[t]he applicability of the statute of

---

[2]ECMO involves circulating and oxygenating blood outside the patient's body.

[3]Section 2401(b) provides:  "A tort against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."

limitations turns on the resolution of issues of fact and credibility of key witnesses," the district court denied summary judgment and the case proceeded to trial. Id. at 27 (Order filed May 19, 1995).

Although the trial also concerned issues of liability and damages, this appeal concerns only the testimony and documentary evidence relating to the statute of limitations. On this point, Ms. Rice testified that although she knew within hours after Markus's birth that he suffered from breathing problems, she believed Markus had been "born with" the problems and did not discover otherwise until October 2, 1992, when Dr. Cooper, a pediatric cardiologist, informed her that Markus's condition was not hereditary, but in fact had been caused by meconium aspiration at birth. Id. at 74; Appellee's Supp. App. Vol. I, at 12-13. With respect to when she first knew CIH had injured Markus, Ms. Rice testified as follows:

> Q:    Angela, when did you know that Claremore Indian Hospital had caused an injury to Markus?
>
> A:    When I spoke to Dr. Cooper in October of 1992.
>
> Q:    And what did you learn from Dr. Cooper?
>
> A:    What he told me was the--the problem that Markus was having--his breathing problems was not hereditary, that it was from him inhaling poop into his lungs.
>
> Q:    When did he inhale that poop into his lungs?
>
> A:    After he was born.

Q: Is that the first time you knew that he was not born with the breathing problem?

A: Yes.

Appellee's Supp. App. Vol. I, at 12-13. Ms. Rice further testified that prior to her conversation with Dr. Cooper, she had no idea Markus had aspirated meconium. Id. at 25.[4]

The United States controverted Ms. Rice's testimony with its own witnesses, as well as with the medical record. First, Dr. Cooper testified that he had no recollection of discussing meconium aspiration with Ms. Rice on October 2, 1992, and that he doubted he engaged in such a discussion. Id. at 130. Dr. Cooper stated that no such discussion was noted in his medical records, and that had he participated in such a conversation, he would have noted it. Id.

Next, Dr. Vitanza, the Saint Francis physician that placed Markus on ECMO, testified that he personally told Ms. Rice on October 5, 1990, that "the cause of the respiratory problem was due to the infant swallowing meconium." Appellant's App. at 269. Dr. Vitanza testified that it "was explained and again using the simplest terms, bowel movement being swallowed, that particular material getting into the baby's lungs causing [sic] a respiratory problem." Id. at

---

[4]Ms. Rice's testimony was not limited to whether medical personnel had used the term "meconium" while speaking with her. She testified that no medical personnel had ever used alternative descriptions such as "getting stool or poop into [Markus's] lungs." Appellee's Supp. App., Vol. I, at 25.

270.  When asked how sure he was that he explained to Ms. Rice that meconium aspiration caused Markus's respiratory problems, Dr. Vitanza testified, "On a scale of one to ten, ten."  Id..

Medical records created at the Indian Health Care Resource Center ("IHCRC") on January 10, 1991, also suggested that Ms. Rice knew, well before her alleged conversation with Dr. Cooper, that Markus had been injured by aspirating meconium at birth.  It is undisputed that Ms. Rice accompanied Markus to IHCRC on January 10, 1991.  Appellee's Supp. App. Vol. II, at 70 (Request for Admission No. 1).  The nurse who took Markus's medical history upon admission recorded that Markus had been "hospitalized for 1 month after birth due to swallowing stools."  Id. at 44.  Dr. Holmes, who also took Markus's medical history that day, likewise recorded that Markus had aspirated meconium.  Id.  Although Dr. Holmes could not specifically recall her conversation with Ms. Rice, she testified that medical histories are customarily obtained from the person who brings the child into the medical facility, and that had she relied on any other source in taking Markus's history, she would have noted it on the record.  Appellee's Supp. App. Vol. I, at 80-81, 88-89.  Dr. Holmes testified that nurses also customarily obtain medical histories from the person who accompanies the child.  Hence, Dr. Holmes testified that the person who brought Markus into IHCRC on January 10, 1991, must have already understood that Markus had

aspirated meconium and that Markus had "breathing problems to the degree that they had to be intubated and on the ventilator and couldn't breathe on their own for a week." Id. at 81-82.[5]

Following trial, the district court found that Markus's claim was time-barred by § 2401(b). Appellant's App. at 65-66 (Order filed June 4, 1996). First, the district court found that once Ms. Rice learned meconium aspiration caused Markus's injury, she suspected that the treatment provided by CIH had injured Markus. Second, the district court disbelieved Ms. Rice's testimony that she had not learned of Markus's meconium aspiration until her alleged conversation with Dr. Cooper, and instead found that Ms. Rice knew "at least as early as January 1991" that meconium aspiration caused Markus's respiratory problems. Id. Hence, the district court concluded that Markus's claim accrued by January, 1991, more than two years prior to the filing of Markus's administrative claim. The district court dismissed Markus's claim, and this appeal ensued.

## II.

_____

[5]A Tulsa Regional Medical Center record dated July 25, 1991, also called into question Ms. Rice's testimony that she did not know about Markus's meconium aspiration until October 2, 1992. Under "Nursing Observations," the following notation is recorded: "Mom states pt. was meconium stained @ birth and has had 'asthma like' probs since." Separate Addendum to Appellant's Br. at 49.

The single issue presented is whether the district court erred in finding that Markus's claim accrued in January, 1991, more than two years prior to the filing of his administrative claim. We review the district court's interpretation of federal law de novo. CCF, Inc. v. First Nat'l Bank & Trust Co. (In re Slamans), 69 F.3d 468, 472 (10th Cir. 1995). However, "[w]e will not disturb the trial court's findings of fact unless shown to be clearly erroneous." Bradley v. United States, 951 F.2d 268, 270 (10th Cir. 1991). A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been made. Cowles v. Dow Keith Oil & Gas, Inc., 752 F.2d 508, 511 (10th Cir. 1985). The resolution of factual issues and conflicting evidence lies solely within the province of the district court. Id.

Under § 2401(b), a claim accrues when the plaintiff has (1) knowledge of the injury and (2) knowledge of its cause. Bradley, 951 F.2d at 270; Arvayo v. United States, 766 F.2d 1416, 1419 (10th Cir. 1985).[6] On appeal, Ms. Rice devotes her entire argument to the "injury" prong of the accrual standard. She argues that the district court should have found that Markus's claim accrued on October 2, 1992, rather than in January, 1991. Specifically, she asserts:

[6]For purposes of accrual under § 2401(b), knowledge of the parent or guardian is imputed to the minor. MacMillan v. United States, 46 F.3d 377, 381 (5th Cir. 1995); Zavala v. United States, 876 F.2d 780, 782-83 (9th Cir. 1989).

> Markus Rice's claim . . . did not accrue under 28 U.S.C. § 2401(b) until October 2, 1992, when his mother, Angela Rice, learned for the first time that he had not been "born with" breathing problems, but that those problems developed because he inhaled "poop" (i.e., amniotic fluid containing meconium) into his lungs after he was born. On that date, she discovered the fact of her son's *injury* from a pediatric cardiologist.

Appellant's Br. at 17 (emphasis added); see also Appellant's Reply Br. at 7 ("The key to Angela Rice's realizing that Markus had been injured was Dr. Cooper's telling her that her son's breathing problems were not hereditary."). Ms. Rice contends that once Dr. Cooper conveyed this information and informed her that Markus's problems resulted from "inhaling poop into his lungs after he was born, *then and only then* did she suspect an injury and its cause." Appellant's Reply Br. at 7-8 (emphasis in original).

The district court found, however, that Ms. Rice knew by at least January, 1991, that meconium aspiration caused Markus's respiratory problems. That finding is not clearly erroneous. Although Ms. Rice testified she did not know about the meconium aspiration until October 2, 1992, her testimony was entirely uncorroborated and contradicted. As previously noted, Dr. Vitanza testified that he personally explained to Ms. Rice in October, 1990, that "the cause of the respiratory problem was due to the infant swallowing meconium." He testified that he used the simplest terms in speaking with Ms. Rice, and explained to her that Markus's injury was caused by a "bowel movement being swallowed" and by

-9-

"particular material getting into the baby's lungs." Furthermore, Dr. Holmes testified that the person who presented Markus for treatment at IHCRC on January 10, 1991, provided a medical history for the child that exhibited an understanding of his meconium aspiration. Ms. Rice admits she is the person who presented Markus at IHCRC on January 10, 1991. Finally, Dr. Cooper did not corroborate Ms. Rice's version of their alleged October, 1992, discussion, but instead testified that he did not believe he discussed meconium aspiration with Ms. Rice at that time. On this evidence, the district court plainly was entitled to conclude that Ms. Rice knew by at least January, 1991, that Markus developed respiratory problems as the result of meconium aspiration.

Ms. Rice argues, however, that the district court failed to acknowledge her testimony that she thought Markus's respiratory problems were hereditary, and did not discover otherwise until her conversation with Dr. Cooper on October 2, 1992. Apparently, Ms. Rice argues that knowledge of Markus's meconium aspiration was not itself enough to provide her with knowledge of "injury," but that she also needed to be told by Dr. Cooper that Markus's respiratory problems were not hereditary. Appellant's Reply Br. at 7.[7]

---

[7]At oral argument, counsel for Ms. Rice argued that "[Ms. Rice] had to be put on notice she is not just dealing with a congenital problem."

-10-

The district court simply was not required to believe Ms. Rice's testimony that she was confused regarding whether her son's respiratory problems were hereditary. First, Dr. Cooper testified that he doubted he even discussed Markus's meconium aspiration with Ms. Rice, much less that he told her anything about the genetic or non-genetic nature of his respiratory problems. Second, Ms. Rice testified that she understood "hereditary" to mean a condition that "runs in the families from generations." Appellee's Supp. App. Vol. I, at 16. When this is juxtaposed with Dr. Vitanza's testimony that he thoroughly explained to Ms. Rice in October, 1990, that Markus's respiratory problems were caused by a "bowel movement being swallowed" and by "particular material getting into the baby's lungs," the district court could reasonably infer that Ms. Rice did not believe there was anything hereditary about the aspiration of a bowel movement, but instead understood by at least January, 1991, that Markus suffered an "injury" at birth.[8] Indeed, the district court specifically determined that while it was conceivable that a young first-time mother would reasonably believe that aspiration of meconium was an unavoidable complication at birth, the record

---

[8]In support of her assertion that she believed Markus's condition was hereditary, Ms. Rice cites an admission form she completed at St. Francis Hospital on May 28, 1991. Appellant's Reply Br. at 8. On the form, Ms. Rice indicates her belief that Markus was "born with" high blood pressure. Addendum to Appellant's Br. at 47. We do not perceive, and Ms. Rice does not explain, how the cause of Markus's high blood pressure has any relevance to Ms. Rice's beliefs regarding the genesis of his respiratory problems.

-11-

would not support a finding that Ms. Rice held such a belief.  Appellant's App. at 65-66 n.5.

This leaves only the "causation" prong of the accrual standard.  In cases involving alleged failures to diagnose or treat, we have held that knowledge of "cause" means more than mere awareness of the *medical* cause of injury.  Arvayo, 766 F.2d at 1420.  In Arvayo, a child suffered permanent injury when an Air Force doctor failed to diagnose the child's bacterial meningitis.  There, we held that accrual depended not merely upon knowledge of a causal connection between the child's injury and the bacterial meningitis (medical cause), but also upon knowledge of the causal connection between the child's injury and the doctor's misdiagnosis, or knowledge sufficient to cause a reasonably diligent person to inquire into causation.  Id. at 1421-22; MacMillan, 46 F.3d at 381.[9]  Whether a

_____

[9]By referring to knowledge of a doctor's misdiagnosis or mistreatment, we do not suggest that knowledge of *negligence* is necessary to accrual.  Both the Supreme Court and this court have made clear that knowledge of negligence is irrelevant to accrual under § 2401(b).  United States v. Kubrick, 444 U.S. 111, 123 (1979) ("We thus cannot hold that Congress intended that 'accrual' of a claim must await awareness by the plaintiff that his injury was negligently inflicted."); Gustavson v. United States, 655 F.2d 1034, 1037 (10th Cir. 1981) ("Whether doctors who treated him had been negligent in not discovering his condition and recommending surgery relates to the question of knowledge of malpractice, a matter irrelevant to the running of the statute of limitations.").  A doctor's failure to diagnose or treat a plaintiff's malady may or may not breach community standards of due care.  Accrual, however, requires only knowledge that the failure, whether or not negligent, was a cause of the injury, or knowledge of information sufficient to cause a reasonably diligent person to inquire into causation.

plaintiff has exercised reasonable diligence in inquiring into cause will "vary with the facts of each particular case." Id.

In this case, the district court concluded that the knowledge Ms. Rice possessed in January, 1991--namely, that Markus's respiratory problems were caused by the aspiration of meconium--was sufficient to place a duty of inquiry upon her, and to commence the running of the statute. On appeal, Ms. Rice has disputed only whether she actually possessed this knowledge in January, 1991, and has not challenged the finding that this knowledge would be sufficient for accrual. Indeed, Ms. Rice has essentially conceded the point by consistently arguing that Markus's claim accrued in October 2, 1992, when she "learned for the first time that [Markus] had not been 'born with' breathing problems, but that those problems developed because he inhaled 'poop' . . . into his lungs after he was born." Appellant's Br. at 17. Significantly, Ms. Rice has never claimed that Dr. Cooper discussed with her on October 2, 1992, the treatment provided by CIH or any possible failures on the part of CIH. And, she has not argued that accrual required anything more than what she allegedly learned from Dr. Cooper.[10] In

_____

[10]One could imagine an argument that the knowledge Ms. Rice claims she gained on October 2, 1992, is not necessarily enough for accrual. Knowledge that a child's respiratory problems were caused by meconium aspiration, rather than heredity, may or may not lead a reasonably diligent person to suspect, or inquire into, a causal connection between the injury and medical treatment received. Although the point may be debatable, Ms. Rice has not raised it.

-13-

light of the district court's finding that Ms. Rice knew by January, 1991, what she claimed to have learned on October 2, 1992--and in the absence of any developed argument by Ms. Rice that some additional knowledge would be required for accrual in this case--we will not disturb the district court's finding that Markus's claim accrued in January, 1991, more than two years prior to the filing of his administrative claim.

## III.

We understand that statutes of limitations often make it impossible to enforce what may otherwise have been perfectly valid claims. Kubrick, 444 U.S. at 125. But § 2401(b) waives the sovereign immunity of the United States, and we are not free to construe it in a manner which extends the waiver Congress intended. Id. at 117. Accordingly, we AFFIRM the district court order dismissing Markus's claim as time-barred under § 2401(b).

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge