*ALLSTATE INDEMNITY COMPANY*
*an Illinois corporation, licensed to and*
*conducting business in Arizona*
Plaintiff-Appellee
*vs.*
*Suzie Holly BLACKGOAT and Lanison Blackgoat*
*as guardians for the minor children of*
*Carl Holly and Valerie Little Holly*
Defendants-Appellants

In the Supreme Court of the Navajo Nation

No. SC-CV-15-01

January 12, 2005

628

R. Dennis Ickes, Esq., Salt Lake City, Utah, for Appellants.

James E. Ledbetter,Esq., and Justin G. Vaughn, Esq., Cottonwood, Arizona, for Appellee.

Before FERGUSON, Acting Chief Justice, and J. BENALLY, Associate Justice (by designation)

This case concerns whether pre-judgment interest should be awarded. Based on our review, we reverse the Kayenta District Court, and award pre-judgment interest.

## I

The relevant facts are as follows. Appellants Suzie and Lanison Blackgoat (Blackgoats) are the guardians of the minor children of Carl Holly and Valerie Little Holly (Holly children). Carl and Valerie died in a car accident on the Navajo Reservation near Red Mesa, Arizona. Appellee Allstate (Allstate) is the insurance company for the driver of the other vehicle. Through their attorney, the Blackgoats sent Allstate a letter several months after the accident to make a claim on the insured's policy on behalf of the Holly children. Allstate responded and indicated that the Blackgoats had to settle with other claimants to the policy, including a passenger in the vehicle that hit the Holly's parents. Once the Blackgoats settled with the other claimants, Allstate would then distribute the funds. Several more communications followed without settlement of the claim. Three and a half years after the accident, Allstate filed an interpleader in the Kayenta District Court under Rule 22 of the Navajo Rules of Civil Procedure. The Blackgoats and other claimants reached a settlement on the distribution of the policy proceeds. However, the Blackgoats filed a counterclaim against Allstate and requested that the court award pre-judgment interest. During consideration of the counterclaim, Allstate deposited the policy proceeds with the court. The Blackgoats filed a motion for summary judgment on the pre-judgment interest

issue, and Allstate filed a motion to dismiss the pre-judgment interest demand. After oral argument, the court denied the pre-judgment interest request, ruling, among other things, that Allstate had fulfilled its responsibilities under the Navajo Common Law concept of *nályééh*. This appeal followed.

## II

The sole issue in this case is whether the lower court abused its discretion when it refused to award pre-judgment interest.

## III

Before proceeding to discuss this case, we note that the issue of pre-judgment interest is not a matter of first impression in the Navajo Nation, as this Court previously has recognized pre-judgment interest as one element of full compensation in tort cases. *See Singer v. Nez*, 8 Nav. R. 122 (Nav. Sup. Ct. 2001). Curiously, though this Court issued *Singer* before Appellants filed their appellate brief, neither side cited it nor discussed it. As it is law of the Navajo Nation on the subject, we discuss it despite the parties' omissions.[1]

### A

The first issue in this case is the proper appellate standard of review. Based on *Singer* we apply an abuse of discretion standard to decide whether the Kayenta District Court correctly denied pre-judgment interest. *See Id.* at 128. "Discretion" means the discretion to act within certain boundaries of rules, principles and customs applied to the facts of the case. *Mitchell v. Davis*, 8 Nav. R.542, 546 (Nav. Sup. Ct. 2004). A court abuses its discretion when it makes an error of law, because it has no discretion whether to apply correct legal principles. *See id.* We therefore review whether a court has applied the correct legal principles to a case *de novo. Id.* Here the question is whether the Kayenta District Court's legal conclusion that pre-judgment interest is not required because Allstate satisfied *nályééh* is correct. The answer depends on whether *nályééh* mandates an award of pre-judgment interest only in some cases or in all cases. Within this framework we now turn to the merits of this case.

### B

In *Singer* this Court identified several theories justifying the award of pre-judgment interest. *See Singer 8* Nav. R. at 129–30. We first stated that pre-judgment interest makes an injured party whole by including the loss of the use of the money that he or she is entitled to while litigating the claim:

> An individual who must litigate to recover damages should be placed in

[1] The Court is aware that the Kayenta District Court did not have the benefit of the guidance we gave in *Singer*, as we issued the opinion after its decision in this case. However, our decisions generally apply to all cases, including appeals, pending at the time we issue the opinion. *See Fort Defiance Housing Corp. v. Allen*, 8 Nav. R. 492, 499 n.4 (Nav. Sup. Ct. 2004). Therefore, the principles announced in *Singer* apply to this appeal.

the same position, when he recovers, as the individual who recovered the day he suffered an injury. Otherwise, the tortfeasor benefits from denying liability and continuing to litigate, while he retains the use of money to which the plaintiff is entitled, and the plaintiff is deprived of the benefit he should have derived from an immediate recovery.

*Id.* at 129. We also recognized that the concept of pre-judgment interest includes "a certain element of punishment in the form of delay damages." *Id.* We noted that the insurance company in the case engaged in bad faith by making settlement offers way below the plaintiffs medical expenses, requiring the plaintiff to litigate the claim to receive proper compensation. *Id.* Finally, this Court recognized that pre-judgment interest fits within the larger Navajo principle of *nályééh. Id.* at 130. We stated that *nályééh* includes the respectful talking out of disputes. *Id.* Based on the failure of the insurance company to negotiate in good faith, we concluded that State Farm did not fulfill its responsibilities under *nályééh* to talk out the dispute. *Id.* Under those circumstances, we held that pre-judgment interest was appropriate. *Id.*

The parties in this case emphasize the "bad faith" justification for pre-judgment interest, though they disagree whether bad faith occurred in this case. Their arguments primarily focus on whether Allstate should have filed the interpleader action when the Blackgoats asserted their claim, or whether it was appropriate for Allstate to require the Blackgoats to seek out and settle with the other claimants to the policy proceeds before they received any money. Citing case law from state jurisdictions and discussing a responsible party's obligations under *nályééh*, their arguments for and against pre-judgment interest focus on the conduct of Allstate in the context of the interpleader process. Allstate further argues that pre-judgment interest is inappropriate for "unliquidated damages," that is, damages that cannot be calculated with certainty, regardless of its conduct in this case. Allstate bases this claim on state cases which have held in similar circumstances that damages from personal injury are not "liquidated," and therefore cannot justify pre-judgment interest.

While we consider *Singer* in our analysis, we are not required to apply it directly. We did not consider the liquidated/unliquidated distinction in *Singer.* We therefore take this opportunity to revisit pre-judgment interest in light of these new arguments. We also analyze the issue again based on our previous statement in *Singer* that our application of pre-judgment interest would evolve through questions arising from new situations. *See Id.* at 131. Further, our approach to statutory interpretation has changed since *Singer, see Tso v. Navajo Housing Authority,* 8 Nav. R. 548, 557 (Nav. Sup. Ct. 2004) (ambiguous statutory provisions to be interpreted in light of Common Law), requiring additional considerations in our analysis.

Based on Navajo statutory law and the Navajo Common Law doctrine of *nályééh,* we do not apply the parties' "bad faith" approach to this case, but hold

that pre-judgment interest is an element of damages regardless of the conduct of the party responsible for compensation or the liquidated or unliquidated nature of the claim. The Navajo Nation Code guides the award of damages in tort cases by mandating that the "judgment shall fairly compensate the injured party for the loss he [or she] has suffered." 7 N.N.C. § 701(B) (1995).[2] The Code does not define "fairly compensate" however, and it is unclear from the plain language, and therefore we look to *Diyin Nihookáá Díne'é Bi Beehaz'áanii* (Navajo Common Law) to assist in our interpretation. *See Tso*, 8 Nav. R. at 559.

The Navajo Common Law doctrine relevant to our analysis is *nályééh. See id.* (interpreting Navajo Preference in Employment Act provision on back pay compensation in light of *nályééh*). *Nályééh* is the Navajo Common Law method by which parties come to an agreement on compensation for an injury. *See Nez v. Peabody Western Coal Co., Inc.*, 7 Nav. R. 416, 421 (1999). *Nályééh* is a unique Navajo doctrine based on the effects of the injury. *Singer*, 8 Nav. R. at 130. As the means by which Navajos customarily compensate injuries, Navajo Nation courts use *nályééh* to assess the adequacy of damages in tort claims. *See Benally v. Broken Hill Propriety, Ltd.*, 8 Nav. R. 171, 176 (Nav. Sup. Ct. 2001). As previously discussed, *nályééh* includes the responsibility to respectfully talk out disputes. *See supra*, at 4. While a "flexible concept of distributive justice" depending on the circumstances of the injury and the positions of the parties, *Nez*, 7 Nav. R. at 421, a central purpose of *nályééh* is to restore harmony between the parties by adequately compensating the injured person or persons. *Benally*, 8 Nav. R. at 176. Therefore, the amount of compensation arising out of that process "should be enough so that there are no hard feelings." *Singer*, 8 Nav. R. at 130. Based on these principles, *nályééh* incorporates what might be expressed in Anglo terms as a procedural requirement and a substantive result.

While Singer emphasized the procedural aspect of *nályééh* to recognize pre-judgment interest, the award of interest is consistent with the substantive result as well, as it is "an element of complete compensation" designed to "make whole" an injured person. *Singer*, 8 Nav. R. at 130. In an era when Navajos increasingly use bank accounts, take out loans on vehicles and homes, and deal with interest on money in a variety of other circumstances, accounting for the time value of money in calculating damages enters into the process of restoring harmony by fully compensating the injured. *Cf. Benally v. Navajo Nation*, 5 Nav. R. 209, 212-213 (W.R. Dist. Ct. 1986) (noting change in value and expectation of Navajo people to money in context of wrongful death compensation under *nályééh*). The retention of money during settlement negotiations and later litigation means that the amount of compensation is less than what the injured party would have received had the payment been made when requested, contributing to hard feelings and disharmony when resolution is delayed. We therefore conclude that

2 The Navajo Nation Council recently amended this section in ways irrelevant to this analysis. *See* Navajo Nation Council Resolution CO-72-03, Exhibit A, § 701(B).

pre-judgment interest is not dependent on the conduct of the parties (except to the extent that the responsible party continues to delay payment) or whether the amount of damages may be known with certainty, but is a central element of full compensation that makes sure that an injured party has no hard feelings. The Kayenta District Court therefore abused its discretion when it declined to award pre-judgment interest under *nályééh*, as pre- judgment interest is a mandatory substantive element of full compensation. The only outstanding issues are then (1) the interest rate, and (2) the time period the interest accrued.

While pre-judgment interest is required and therefore not in the discretion of the district court to deny, the interest rate depends on the circumstances of the case, and is within the discretion of the district court to calculate and apply. The rate of pre-judgment interest as an element of *nályééh* is affected by the ability of the party responsible for compensating the injured to pay. *See In re Claim of Joe*, 7 Nav. R. 66, 69 (1993). The rate is also affected by outside economic factors concerning the interest rate available at the time that the interest accrues, as it is that rate of return which is lost when compensation is delayed. The Court announced a process in *Singer* that first allows the plaintiff to propose an interest rate, and puts the burden on the defendant to show the rate is unreasonable. *Id.* at 131. In the context of insurance, we suggested that the interest rate earned by the insurance company during the claim process was a good method to establish a reasonable interest rate if the defendant objects to the rate proposed by the plaintiff. *Id.* We reiterate that this method is appropriate and in the sound discretion of the district court to apply.

The time period within which to apply interest also depends on the circumstances of the case. We follow *Singer* to hold that in tort cases the date the interest begins accruing is the date the request for compensation is received by the party responsible for payment. *See id.* Here, in the context of interpleader, we hold that the period for calculating interest ends when the insurance company actually deposits the money in the court, and therefore ends its control over the funds. In non-interpleader cases, the date is the date judgment on damages is rendered by the court. As discussed, the amount of interest within this period, based on the *Singer* procedure, is within the district court's discretion, which we will not reverse absent a showing of an abuse of that discretion.

## IV

Based on the above, the Kayenta District Court abused its discretion when it refused to award pre-judgment interest. As this matter has been pending in this Court for some time, however, we will not remand it. Instead, we allow the parties to file briefs to this Court on an appropriate interest rate and the time period it accrued. Under the process in *Singer*, Appellant shall have twenty (20) days from receipt of this opinion to file its brief, and Appellee shall have twenty (20) days to respond to the brief.