OPINION

This ease concerns the intersection of comparative negligence and nályééh The Kayenta District Court dismissed this case because it believed those concepts to be, among other things, fundamentally incompatible. The Court affirms the dismissal of Appellant’s complaint, but for different reasons than those given by the District Court.
I
This case arises out of a fatal accident between a motorist and a horse. Appellant Marilyn Joe (Joe) and Mario Nelson, Sr., hit a horse that wandered onto Highway 163, a road within the Utah portion of the Navajo Nation. Joe was pregnant at the time, and later gave birth to a son, Mario Nelson, Jr. Mario Nelson, Sr. died as a result of the accident.
Joe filed several suits and received at least a couple of settlements for the accident. Joe filed suit in Utah state court against the State of Utah. The State set- *590 tied. Joe also received a settlement from an insurance company that insured the vehicle that hit the horse. The present appeal arises out of the two cases Joe filed in the Navajo court system. Joe first sued the Navajo Nation and Edward Black in Kayenta District Court. Joe alleged that Edward Black was responsible for the horse that wandered onto the road. The Navajo Nation requested transfer of the case to the Window Rock District Court pursuant to the Navajo Nation Sovereign Immunity Act. See 1 N.N.C. § 555(D) (2005). The District Court transferred the case. Thereafter, Joe agreed to dismiss the Navajo Nation from the suit, leaving Edward Black the lone defendant. Black never responded to the complaint, and, after a hearing on damages, the Window Rock District Court issued a default judgment. According to the transcript of the damages hearing, Joe’s counsel represented to the court that Edward Black was the sole responsible party, and alleged that he was responsible for the whole amount of Joe’s damages. The Window Rock District Court awarded Joe $900,000 and did not allocate any responsibility or damages to other responsible parties. Before the Window Rock District Court issued its judgment, Joe filed another suit in the Kayenta District Court against Appellees Roy Black, Christine Black, XYZ Corporation, and ABE Partnership (Appellees).[1] According to Joe, there was no time to join Appellees in the Window Rock case, and she therefore filed the second case in Kay-enta, the judicial district where the accident occurred. In that second case Joe alleged Appellees were the responsible parties and that they were liable to pay her damages.
This is the second time this case has been before this Court. First, the Kayen-ta District Court dismissed Joe’s second complaint because of the prior Window Rock District Court default order, based on an alleged “policy against multiple litigation.” Order of Dismissal, January 12, 2005, Index Listing No. 15, at 6. Joe appealed the dismissal to this Court. Before oral argument, the Court remanded the case back to the Kayenta District Court, instructing it to apply the principles of comparative negligence and nályééh to award Joe damages against Appellees, if Appellees were partly responsible for the accident. See Order of Remand, No. SC-CV-22-05, at 3 (Nav.Sup.Ct. September 27, 2005). This Court instructed the District Court to consider the settlements Appellants received in its consideration of nályééh. Id. On remand, the Kayenta District Court dismissed the case again. The court ruled that it could not apply comparative negligence and nályééh without joining all alleged tortfeasors. It also ruled that it could not apply those principles because they required evidence on settlements by other parties, which the court asserted would violate “the evidentiary policy against admitting evidence of settlements.” Order, November 20, 2006, at 4. It finally ruled that it could not apply those principles together because they were incompatible, because comparative negligence comes from the “adversarial” Anglo-American legal system, while ná-lyééh is a non-adversarial Navajo principle of relationships. Joe appealed again. This Court held oral argument at American University School of Law in Washington D.C. on April 5, 2007.
II
The issues in this case are 1) whether a court can apply comparative negligence *591 and nályééh if one or more tortfeasors cannot be joined because the court lacks jurisdiction over them, 2) whether the court is barred from applying comparative negligence and nályééh if their application requires the admission of evidence of settlements by other tortfeasors, 3) whether comparative negligence and nályééh can be applied together, and 4) whether Appellant’s complaint is otherwise barred under nályééh,

III

The District Court first concluded that it could not apply comparative negligence and nályééh if one or more tortfeasors cannot be joined because the court lacks jurisdiction over them. According to the court, in situations where one or more tortfeasors in a comparative negligence case are outside the jurisdiction of the court, a Navajo court simply cannot proceed. The court correctly describes nályééh as process for restoring relationships between the injured party and the tortfeasors. See Allstate Indemnity Co. v. Blackgoat, 6 Am. Tribal Law 631, 635, 2005 WL 6235872, *3 (Nav.Sup.Ct.2005) (describing principle of nályééh); Benally v. Broken Hill Proprietary, Ltd., 3 Am. Tribal Law 518, 520, 2001 WL 36173236, *2 (Nav.Sup.Ct.2001). However, according to the court, those relationships cannot be restored if one or more of the tortfea-sors cannot be required to participate in the Navajo proceeding. The court further believed that comparative negligence requires all the tortfeasors to participate so that the comparative fault of each can accurately be measured. As the State of Utah and the Navajo Nation allegedly could not be joined, apparently due to subject matter jurisdictional and sovereign immunity issues, the court ruled that it simply coukl not proceed to hear the case.[2]
The District Court erred, as there is no absolute prohibition on hearing a comparative negligence/ nályééh case against a tortfeasor if other tortfeasors cannot be joined in the action. If true, injured parties might never be afforded the opportunity to seek redress from some tortfeasors, as some claims can only be brought in the Nation’s courts. State and federal courts do not have jurisdiction over certain cases arising within the Nation. See Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) (state court lacks jurisdiction over claims against Navajo defendants arising from conduct within the Nation); 28 U.S.C. §§ 1331, 1332 (limiting federal court jurisdiction to claims against citizens of different states and cases that involve a question of federal law). Other tortfeasors may be outside the authority of the Court for non-jurisdictional reasons, such as an inability to serve process or the situation where some of the alleged tort-feasors settle without a lawsuit ever being filed. If the Nation’s courts lacked the ability to hear those cases, the injured parties would simply go uncompensated. Denying an injured person the opportunity to seek redress is clearly inconsistent with nályééh. The Court will not endorse a rule that absolutely bars comparative negligence claims simply because one or more tortfeasors are outside the jurisdiction of the Nation’s courts. Under Rule 19 of the Navajo Rules of Civil Procedure, our courts are required to dismiss certain cases because one or more parties are “indispensable” to the action. However, a party is not indispensable simply because they are one of several tortfeasors; there are multiple elements the party must meet *592 to trigger dismissal of the ease. See Rule 19, Navajo Rules of Civil Procedure. The District Court did not cite Rule 19 or engage in any analysis of its provisions. This Court will not engage in that analysis here, as it requires facts not in the record. The Court does conclude that the District Court wrongly dismissed the complaint on the ground that lack of joinder of one or more tortfeasors outside the jurisdiction of the court categorically requires dismissal.
IV
The District Court further ruled that it could not apply comparative negligence and nályééh because they require the introduction of evidence on settlements Joe received from other tortfeasors. In its remand order, this Court instructed the District Court to consider the settlements Joe received in its consideration of ná-lyééh. The District Court declined to do so, believing that consideration of what Joe received from others would violate “the evidentiary policy against admitting evidence of settlements.” Order at 4. The District Court did not cite a specific rule in the Navajo Rules of Evidence that prohibits introduction of evidence of settlements in comparative negligence situations. The court's “evidentiary policy” presumably comes from Rule 10 of the Navajo Rules of Evidence (NRE), which states:
Evidence of (1) furnishing or offering or promising to furnish or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount ... This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
Read carefully, this rule does not prevent the introduction of settlements under the circumstances of this case. First, the rule prevents introduction of evidence on a settlement “to prove liability for or invalidity of the elaim or its amount.” NRE 10. The party introducing the evidence must be attempting to show that another party is liable because of a settlement or attempted settlement, or that based on a settlement or attempted settlement, a claim made by another party is somehow invalid on its face or seeks an inappropriate amount. The current case involves none of these scenarios. The District Court would not use any settlements to find Appellees liable; Appellees did not enter into any settlements and in a comparative negligence situation the settlement of others has nothing to do with whether Appellees are liable. The court also would not invalidate any claim or the amount of any claim based on the settlements of other parties. The admission of information on the settlements serves a different purpose: ensuring that the amount Joe might receive from Appellees is appropriate under nályééh. Even if the court arguably would be finding the amount of Joe’s claim “invalid” if it adjusts her claim based on the amount she has received from others, the rule must be read consistently with nályééh, not in conflict with it. See Thomas v. Greyeyes, 5 Am. Tribal Law 400, 404, 2004 WL 5658108, **3-4 (Nav.Sup.Ct.2004) (stating that statutes must be in interpreted in harmony with Diñé bi beenahaz’áánii). The District Court used the rules of evidence to bar the application of nályééh. The specific and narrow evidentiary Rule 10 cannot be utilized to prohibit the application of the general Navajo concept of nályééh. The proper analysis is the opposite; the rule must be harmonized with *593 náíyééh to allow its application. The Court holds that the evidentiary rule barring evidence of settlements does not bar consideration of settlements in comparative negligence cases, when necessary to consider the proper amount of damages the plaintiff is due under náíyééh.
V
The District Court also ruled that it is legally impossible to proceed under both comparative negligence and náíyééh because they are incompatible doctrines. According to the court, negligence is an Anglo-American legal theory based on adversity. Conversely, náíyééh is a Navajo theory based not on adversity, but on the restoration of relationships, and, therefore, they are mutually exclusive. Curiously, the District Court ignored several opinions that have applied negligence and náíyééh together. See Benally v. Mobil Oil, 4 Am. Tribal Law 686, 691-94, 2003 WL 25794036, **4-6 (Nav.Sup.Ct.2003); Jensen v. Giant Industries, Arizona, Inc., 4 Am. Tribal Law 579, 584-85, 2002 WL 34461239, **3-5 (Nav.Sup.Ct.2002). Further, the Navajo Nation Code mandates the application of negligence principles, including comparative negligence. See 7 N.N.C. § 701(B) (2005). Though that legislative mandate by itself does not means the concepts are compatible, see In re Appeal of Lee, 6 Am. Tribal Law 788, 791-92, 2006 WL 6171261, **3-4 (Nav.Sup.Ct.2006) (Election Code residency provision invalid as in conflict with Fundamental Law statute); In re Estate of Kindle, 6 Am. Tribal Law 750, 754, 2006 WL 6168972, *3 (Nav.Sup.Ct.2006) (same for Probate Code provision mandating state law), the Court has incorporated the concept of negligence in its opinions, and it is a concept consistently applied in the Nation’s tort law. See e.g., Benally v. Mobil Oil, 4 Am. Tribal Law 686, 691-93, 2003 WL 25794036, **4-6; Jensen v. Giant Industries, Arizona, Inc., 4 Am. Tribal Law 686, 691-94, 2002 WL 34461239, **3-5; Benally v. Big A Well Service, 2 Am. Tribal Law 518, 522, 2000 WL 35732588, *2 (Nav.Sup.Ct.2000); Thomas v. Succo, 7 Nav. R. 63, 64-65 (Nav.Sup.Ct.1993); Wilson v. Begay, 6 Nav. R. 1, 3-5 (Nav.Sup.Ct.1988); Mann v. Navajo Tribe, 4 Nav. R. 83, 85 (Nav.Ct.App.1983), That the concepts of negligence and comparative negligence, as expressed in the English legal terms of art, originated in the Anglo-American adversarial system does not per se make it incompatible with náíyééh. This Court has applied náíyééh to cases involving disputed claims to worker’s compensation and non-Indian insurers, concepts originating from Anglo-American law that might be characterized as “adversarial” as well. See, e.g., Allstate, 6 Am. Tribal Law at 635, 2005 WL 6235872, *3 (insurance); Benally v. Broken Hill, Ltd., 4 Am. Tribal Law 686, 691-94, 2001 WL 36173236, **1-3; Benalli v. First Nat’l Ins. Co. of America, 7 Nav. R. 329, 337-38, 1 Am. Tribal Law 665 (1998).
 Even if these prior opinions did not exist, there is no conflict between comparative negligence and náíyééh. Comparative negligence serves the purposes of identifying who is responsible to make the injured party whole, and allocating the responsibility for the injury between them. The doctrine assures that an individual tortfeasor is responsible only for his or her actions, and is not responsible for the conduct of others. See Benally v. Mobil Oil, 4 Am. Tribal Law 686, 691-94, 2003 WL 25794036, **4-5. This is a Navajo principle, even if the Court uses Anglo-American legal language to describe it. Náíyééh defines how the responsible parties, once identified and once their collective responsibility is allocated, make the injured party whole. They are indeed then not incompa- *594 tibie doctrines, but work together to bring people back into harmony. In Begay v. Navajo Nation, this Court noted that “due process” has always existed in Dine society; the fact that the English words are used does not necessarily mean that the concept and legal theory originated with the Anglo-Americans. 6 Nav. R. 20, 24 (Nav.Sup.Ct.1988). The same is true for “negligence” and “comparative negligence.” These terms are part and parcel of nályééh.
The District Court’s ruling is in conflict with the consistent approach this Court has taken in its opinions. The Court will not overturn these precedents based merely on the claim that negligence and ná-lyééh cannot co-exist, when this Court has applied them together. The District Court erred, and dismissal on that ground was inappropriate.
VI
Though the District Court erred in refusing to apply comparative negligence and nályééh, the Court holds that Appellant’s complaint is nonetheless barred. Appellant sought and received a default judgment against Edward Black in the Window Rock District Court. Before that court, Appellant’s counsel represented that Mr. Black was the sole tortfeasor; he asked for and received the full amount of damages from Mr. Black. Transcript of Window Rock Hearing, at 8—1. However, Appellant filed a separate action in Kayen-ta District Court against Appellees, seeking compensation based on the theory that they were liable for Appellant’s damages. At no time did counsel disclose to the Kayenta District Court that the Window Rock District Court awarded Appellant the full amount of damages allegedly owed.[3] The principle of nályééh includes a requirement of good faith; the person seeking nályééh from another must honestly represent to that party that he or she is liable for some or all of the injured person’s injuries. Here Joe did not honestly represent to the Kayenta and Window Rock courts, Appellees or Mr. Black who was responsible for the injury or how much she was due. Instead, Joe through her counsel sought the allegedly full compensation from several different parties without disclosing that to any of those parties. Joe had several opportunities to fix this problem. For instance, she might have attempted to join Appellees in the Window Rock case, or moved to transfer the case against Edward Black back to Kayenta and consolidate it with the pending case there. She did none of those things. Whatever the rules in outside jurisdictions, this conduct is improper under Navajo law. Dismissal of her claim against Appellees was appropriate.
VII
Based on the above, the Court concludes that the Kayenta District Court erred in its legal analysis, but AFFIRMS its dismissal of the complaint on other grounds stated herein.

. XYZ Corporation and ABE Partnership are fictitious entities named in Joe’s complaint, apparently to cover the possibility that some undiscovered entity was wholly or partially responsible for the horse entering the roadway.

. Joe did not sue the State of Utah in the complaint she filed in the Kayenta District Court. The Court assumes the jurisdictional and immunity issues as to Utah were not actually litigated in Kayenta.

. Joe claims there was simply no time to join Appellees in the Window Rock action. Joe cites nothing to support that claim, and the Court does not consider it. Joe also has not shown that she made any effort to modify or vacate the default judgment. At oral argument Joe’s counsel only indicated that Edward Black is probably “judgment proof,” meaning that Joe could never collect the amount of the judgment from Mr. Black.