Mark S. GUSTAVSON, Personal Representative of the Estate of Terry Don Newcomb, Deceased, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 80–1420.

United States Court of Appeals, Tenth Circuit.

Argued July 16, 1981.

Decided Aug. 6, 1981.

Earl D. Tanner, Jr., Salt Lake City, Utah (Earl D. Tanner, Salt Lake City, Utah, with him on the briefs), for plaintiff-appellant.

Gordon W. Campbell, Asst. U. S. Atty., Salt Lake City, Utah (Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, with him on the briefs), for defendant-appellee.

Before LOGAN and BREITENSTEIN, Circuit Judges, and BROWN, District Judge *.

LOGAN, Circuit Judge.

This appeal arises out of a suit brought under the Federal Tort Claims Act by Terry Don Newcomb and continued by the representative of his estate after Newcomb's death. The trial court granted summary judgment in favor of the United States, holding that the claim is barred by the statute of limitations. *See* 28 U.S.C. § 2401(b). On appeal Newcomb's representative seeks to avoid application of the limitations statute on the grounds that he reasonably failed to draw a causal link between his injury and some of the negligent diagnoses by military doctors until within two years of the date of filing, and that the limitation period did not commence until his damages were susceptible of ascertainment. We hold his claim is barred and affirm the trial court's dismissal for the reasons hereafter stated.

As a child, Newcomb received his medical care from military doctors because of his father's tenure and service with the United States Air Force. Newcomb had a severe bedwetting problem for which he saw military doctors from time to time. These doctors apparently misdiagnosed his problem as merely an anxiety reaction and never realized that his difficulty was caused by vesico-ureteral reflux and the infection resulting from it. This disorder was correctable by an operation involving reimplantation of ureters. Newcomb discovered the cause of his chronic problem in 1973, when

---

* Honorable Wesley E. Brown, of the United States District Court for the District of Kansas, sitting by designation.

civilian doctors made a proper diagnosis and shortly thereafter operated and reimplanted his ureters. They informed him that the operation could have been done years before and that his kidneys had been seriously damaged by the long continued reflux. The evidence is clear that he realized that at least some of the military doctors who had seen him through the years had misdiagnosed his medical problem.

By the time the civilian doctors operated, so much kidney damage had been done that Newcomb's health had deteriorated irreversibly; his kidneys eventually failed and he went on dialysis. In 1977, Newcomb filed an administrative claim which precipitated the instant action. Shortly thereafter he died of complications associated with kidney failure.

 In an effort to avoid application of the limitations statute Newcomb's representative asserts that the statute did not commence to run until he realized his kidney condition was irreversible, requiring dialysis or transplant, and that he might die. We do not agree. Under 28 U.S.C. § 2401(b) a claim must be presented in writing to the appropriate federal agency within two years of the time when a claimant knows of the existence and the cause of his injury. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In a case involving a skin disorder we recently held that a claimant is aware of the injury once he or she has been apprised of the general nature of the injury. Lack of knowledge of the injury's permanence, extent, and ramifications does not toll the statute. *Robbins v. United States*, 624 F.2d 971 (10th Cir. 1980). *Kubrick* and *Robbins* control this aspect of the case, and the statute of limitations must be regarded as running when Newcomb had knowledge, in 1973, that his kidneys had been injured by the failure to correct a long-term ureter disorder.

Newcomb's representative argues a separate cause of action arises out of each negligent diagnosis by a military doctor. Newcomb recognized in 1973 that some of the military doctors who saw him were negligent because he had visited them for bed-wetting; he identified bedwetting with his kidney problems. Allegedly he did not connect other visits to military doctors—specifically visits concerning a painful mass in his neck and fever—to his kidney problems. It is argued that causes of action with respect to these incidents did not commence until Newcomb was able to recall, through examination of military medical records first obtained in 1977 and the aid of expert testimony, that these doctors, too, should have connected his problem with his kidney damage and advised him on the reimplantation operation.

Of course, the usual tort claim under the Act for medical malpractice arises out of a single doctor's misdiagnosis; we have not found a case precisely like that before us. We believe, however, that the *Kubrick* case directly controls the disposition of this issue. In *Kubrick*, plaintiff was injured by neomycin irrigation. Although plaintiff was aware at an early stage that the neomycin had caused his injury, it was not until several years later that he knew that he had been treated negligently. Plaintiff contended that not until he was aware of the negligent quality of the treatment did the statute begin to run. The Court squarely rejected this contention, holding that notice of the injury and its cause began the running of the statute. The Court explained as follows:

> "That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff."

444 U.S. at 122, 100 S.Ct. at 359.

 In the instant case, the evidence indisputably shows Newcomb knew of the

injury (damage to his kidneys) and the cause (failure to correct his ureter disorder at an earlier stage). Whether doctors who treated him had been negligent in not discovering his condition and recommending surgery relates to the question of knowledge of malpractice, a matter irrelevant to the running of the statute of limitations. Thus, regardless of whether we characterize this suit as involving multiple causes of action or a single cause of action, the statute of limitations began to run in 1973 as to any claim Newcomb had. Once Newcomb was armed with the knowledge of his injury and its cause, the burden was upon him to ascertain in what instances his condition should have been recognized. The facts in this case reinforce the opinion in *Kubrick* that this burden is not unduly onerous. The doctors who treated him in 1973 indicated that they would have been willing to evaluate the malpractice aspects of his case. Additionally, the evidence indicates that in 1973 Newcomb was aware that at least some of the military doctors had been negligent in failing to properly diagnose his medical problem. Newcomb need only have pursued his claim to preserve it.

AFFIRMED.