OPINION

This Court previously issued a Permanent Writ of Prohibition concluding that the Chinle Family Court lacked jurisdiction to continue to keep the minor ehild in the custody of Social Services because the Navajo Nation failed to show by clear and convincing evidence that the ehild is “dependent” under 9 N.N.C. § 1002(O)(2) (2005). The Court now explains that decision.
I
The facts of the case indicate that a Petition for Adjudication of Dependent Child was filed with Chinle Family Court on February 5, 2008. The Petition alleged that on or about January 31, 2008 Child Protective Service Investigation provided a summary to the Navajo Nation Prosecutor that the three-year old child was detained “due to a report of the father being physically abusive to the child.” The Petition alleges the child’s mother “is diagnosed as being schizophrenic and is under doctor’s care, and her ability to parent a child is questionable due to the fact that she has been involuntary committed for her behaviors.” The Petition further states that the mother “had been involuntary [sic] committed twice during the past three years” and “no one brought forth notice to Court [sic] that she had a ehild.”
A hearing was conducted on April 9, 2008 at which time Clara Teller, a Child Protective Service worker, who possessed an Associate of Arts degree, testified that on the day of the incident she was contacted by the hospital about reports that the child was in the hospital and injured. She testified that she spoke with the child’s mother and paternal grandmother. The mother reported that on January 26, 2008 while she was at the home of the child’s father heard slapping noises in the next room and called the police regarding the incident. According to Ms. Teller, during the course of the mother’s contact with her, the mother revealed to her, “she was schizophrenic, she’s diagnosed as schizophrenic” and diabetic. Ms. Teller testified that she did not know if the mother had *645 cared for the child alone. The Navajo Nation rested its case. Baldwin’s then twice moved to dismiss the Petition as it pertained to Ms. Baldwin or alternatively to deny the petition since the Navajo Nation had not proven by clear and convincing evidence that the child was a dependent child. The Navajo Nation Presenting Officer Gorman responded to the motion by stating:
Miss Baldwin “has never had Ml care of the minor child. The care was always under someone else ... and I think that at this point the minor child’s injury is because of the fact that the child was in the father’s home”. The child was never in Miss Baldwin’s home.
Thereafter Baldwin’s Counsel responded that no evidence had been introduced as to whether or not Ms. Baldwin ever cared for the child. Baldwin then testified that she had on several occasions assumed active care of the minor child—fed him, played with him, exercised with him, read to him. Baldwin further testified that she was unable to care for the child for a two-week period while she was in treatment. Baldwin’s father testified that he observed that Baldwin has been able to care for the child. The Court admitted during the hearing, that it did not have information on the mother’s home situation and,
“was not going to make any decisions concerning change of custody until the proper investigation and assessment was done at the Respondent’s home. In the meantime, the child, having been adjudicated a dependent child both with regard to Mr. Carroll and Miss Baldwin, orders that the child remain a ward of the court.”
In its Minute Entry and Order from Adjudicatory Hearing the Court found:
Ms. Teller testified that Ms. Baldwin told her that she has schizophrenia and currently takes medication and attends a day program called Three Springs for support. Ms. Teller testified that on DSS’s behalf she took the minor child into custody because Ms. Baldwin w'as afraid of Mr. Carroll, Ms. Baldwin has I a mental illness, and Ms. Teller thought DSS could held arrange for resources for Ms. Baldwin and the child Ms. Baldwin [sic] testified that Ms. testified that she did not know if Ms. Baldwin had cared for the minor child in the past or was able to do so.
The Court denied the motions finding that there was not enough information to grant the Motions. The findings further state that Baldwin testified that she regularly cared for the minor child, fed and bathed him and read to him. It also states that Baldwin’s father testified hat Ms. Baldwin has cared for the minor child in the past and was able to currently do so.
No evidence was produced before the Court that the mother’s health care providers lad been consulted as to inform the Court of Ms. Baldwin’s present ability to care for the child or revealed any current condition which suggested an on-going inability of the mother to care for her child.
II
The question presented to the Court is whether the Navajo Nation met its burden of Droving by dear and convincing evidence that the child is a dependent child under 9 N.N.C. § 1002(0)(2). 9 N.N.C. § 1002(0)(2) requires a finding that the child is without parental care and control, or whose subsistence, education, medical or other care or control necessary for his or her well-being is inadequate because of the faults or habits of the his parents, guardian or custodian or their neglect or refusal, when able to so, to provide them.
*646 The District Court clearly failed to make a finding with regard to the mother. At best, the testimony of the Navajo Nation’s witness only revealed that the worker did not know if Ms. Baldwin had cared for the minor child in the past or was able to do so. The only other possible factual basis for a finding that the child was a dependent child under 9 N.N.C. § 1002(O)(2) was the Court’s recitation of the testimony of Miss Baldwin that she “currently takes medication and attends a day program called Three Springs for support.” There is no discussion as to whether the medication or the attendance at the day program in any way leaves the child without proper parental care and control or meets any of the conditions listed by Section 1002(0)(2).
Navajo Fundamental Law strongly acknowledges the core importance of le’e. While Title 9, generally and 9 N.N.C. § 1002 specifically, enumerates factors to be considered for determining dependency, the Court holds that there are instances when certain traditional concepts are so core to basic values of Navajo tradition, culture and family values that broader consideration beyond the statute is required. The Navajo concept of k’é is such a core value.
The Navajo concept of k’é defines a peaceful and harmonious relationship which respeets the present and future well being of the person. At the core of retaining k’e is maintaining respect for others, particularly respect in one’s use of words in talking about others. Respectful use of one’s words requires the reservation, circumspective or complete avoidance of judgmental characterizations of others which overly-broadly designate a certain negative trait across a wide timeframe, or which inaccurately and negatively characterize a single negative trait of a person to be the permanent, complete and unchanging character of a person. The understanding is that when one fails to properly exercise respect by engaging in these types of inaccurate characterizations of another person, he or she risks endangering the future wellbeing of the person, the person’s family and the community (a network of interrelated families) by creating conditions which may be conducive toward maintaining or exacerbating the existence of such characteristics.
Diagnosis of an individual requires professional expertise; when such a diagnosis is used outside the context of its professional use it introduces the risks of mis-characterizations, inaccuracy and potential prejudice and bias. In the case at hand, a mother’s disclosure of her condition utilizing laymen’s language to another individual who has no knowledge of the scope of the diagnosis and does not possess the appropriate clinical training and experience in diagnosis, is harmful. While the mother’s disclosure of the diagnosis was voluntary, it was done by an individual who also did not possess the full clinical training to describe how that diagnosis was used to design a treatment plan and whether the goals of the plan had or were being met. Furthermore, despite the testimony from the mother that she believed that she was willing and able to care for the child, the Family Court used the mother’s reporting of a past diagnosis as a basis for imposing upon the mother the burden of proving that she could care for the child, rather than requiring that the Navajo Nation retain its burden of proving that the mother was unable to care for the child.
If the law is interpreted so that upon disclosure of certain circumstances such as a parent’s past efforts to obtain mental health treatment shifts the burden of proof to the parent to prove their fitness, the likely result is to encourage nondisclosure. Further, when a parent’s psy- *647 ehological diagnosis is disclosed in laymen’s terms to a worker without the appropriate clinical training and experience in diagnosis there is a danger that the disclosure will be inadequate for the purpose of finding that the child is without parental care and control. The Navajo concept of k’e requires that families be properly protected from nonexistent or faulty conclusions that do not meet the standard of clear and convincing evidence.
This Court holds that the Chinle Family Court’s failure to specify in its findings how a parent’s disclosure of a past diagnosis of a mental health condition deemed the child to lack proper parental care and control or meets any of the conditions listed by 9 N.N.C. § 1002(0)(2) is clearly erroneous and must be overturned.
Ill
Based on the above, the Court issued a permanent writ of prohibition against the Family Court.