**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FRANCES LEON HARVEY,

     Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

     Defendant - Appellee.

No. 11-2164

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 2:08-CV-00107 MCA-CG)**

---

Mickale Carter, Beaver Dam, Wisconsin (Burton Broxterman, Albuquerque, New Mexico, with her on the briefs), appearing for Appellant.

John S. Koppel, Attorney, Appellate Staff, Civil Division (Tony West, Assistant Attorney General; Kenneth J. Gonzales, United States Attorney; and Mark B. Stern, Attorney, Appellate Staff, Civil Division, with him on the brief), Department of Justice, Washington, DC, appearing for Appellee.

---

Before **O'BRIEN, TYMKOVICH,** and **MATHESON,** Circuit Judges.

---

**MATHESON**, Circuit Judge.

# I. INTRODUCTION

Frances Leon Harvey's appeal stems from a Federal Tort Claims Act ("FTCA") lawsuit that Mr. Harvey brought against the United States government for complications arising from an injury to his hand.

Mr. Harvey claims that government employees injured him by (1) misdiagnosing and delaying treatment of his hand fracture, and (2) performing negligent surgery on his hand. He argues that the district court erred in holding the misdiagnosis/delay-in-treatment claim ("misdiagnosis claim") to be time-barred and in granting summary judgment on the negligent surgery claim for failure to produce expert evidence. Also, as a threshold matter, Mr. Harvey contends that the district court should have granted his motion for default judgment.

The district court agreed with Mr. Harvey that Navajo law is the substantive law that should be applied to this case. But Mr. Harvey argues on appeal that the district court failed to follow Navajo law in dismissing his negligent surgery claim.

We hold that the district court properly denied Mr. Harvey's motion for default judgment. Although we disagree with the district court's conclusion that the misdiagnosis claim was time-barred, we conclude that Mr. Harvey's failure to provide expert evidence doomed both his misdiagnosis and surgical malpractice claims. Finally, although the parties disagree about whether Arizona law or Navajo law applies, we need not decide that issue because the outcome is the same under both.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## II.     BACKGROUND

### A. *Factual Background*

Mr. Harvey is an enrolled member of the Navajo Tribe and resides on the Navajo Reservation in New Mexico.  Fort Defiance Indian Hospital ("FDIH") is located on the Navajo Reservation in Arizona.  Indian Health Services is an agency of the United States government and operates FDIH pursuant to a lease with the Navajo Nation.

In early February 2004, Mr. Harvey fell on ice and hurt his right hand.  On February 6, 2004, he visited the walk-in clinic at FDIH, where his hand was x-rayed.  The radiology report on the x-ray notes a fracture of the base of the fifth metacarpal, but a note from Mr. Harvey's medical records states "X-rays all ok." Aplt. Appx. at 126. Health care providers at FDIH gave Mr. Harvey Motrin for his pain and advised him to return in a month if his condition did not improve.

On March 5, 2004, Mr. Harvey returned to FDIH.  A note from that day again states that "X-rays were ok."  *Id.* at 129.  Mr. Harvey was given more Motrin.

On March 29, 2004, Mr. Harvey returned to FDIH and was x-rayed again.  The medical record from that visit notes a "[r]ight fifth metacarpal (digit) base fracture 2/6/04."  *Id.* at 132A.  Mr. Harvey "was told he needs to see ortho ASAP."  *Id.*

The following day, Mr. Harvey visited FDIH's orthopedic clinic.  An orthopedic surgeon determined that it was not possible to reduce the two-month-old fracture.  The medical record states "2 months old not possible to reduce now."  *Id.* at 133.  Mr. Harvey

-3-

was provided with a splint and directed to "use [it] part time for comfort." *Id.* He was asked to return to the clinic in approximately two or three weeks.

On April 20, 2004, Mr. Harvey returned to the orthopedic clinic. For the first time, he was advised to undergo surgery. Mr. Harvey returned to the clinic on May 3, 2004, for a pre-operation appointment. The medical record reflects that on that day both the surgery and "all adverse reactions" were discussed with Mr. Harvey. *Id.* at 135. Mr. Harvey also signed a consent form, which states that "[c]ommon and important risks associated with the proposed operation . . . include [i]nfection, [n]eural [v]ascular trauma, [n]on-union, [and] [a]rthritis." *Id.* at 136. On May 5, 2004, Mr. Harvey underwent surgery on his hand.

Mr. Harvey returned to the orthopedic clinic on May 10, 2004, for a follow-up appointment. On May 13, 2004, he again returned because of hand pain. An x-ray revealed no infection and that the hand was healing. Health care providers removed Mr. Harvey's stitches, recasted his hand, and instructed him to return to the clinic in four weeks for cast removal and an x-ray.

On June 10, 2004, Mr. Harvey came to the clinic and reported his hand was swollen and turning yellow. He returned on June 16, 2004. The medical record from that day states that Mr. Harvey's hand was swelling but healing well. Mr. Harvey claims that he was informed on June 16, 2004, that it would take a year for his hand to return to normal.

-4-

On March 21, 2005, Mr. Harvey returned to the clinic and complained of pain. An examination of his hand revealed ulnar nerve entrapment. The medical record states that Mr. Harvey was instructed to wear a wrist support and to undergo physical/occupational therapy. Mr. Harvey claims he was told that it would take "yet another year" for his hand to return to normal. *Id.* at 182. By April of 2006, Mr. Harvey did not believe that his hand was "right." *Id.*

## B. *Procedural History*

On September 20, 2004, Mr. Harvey signed an Authorization for Use or Disclosure of Health Information for records related to "Misdiagnos [sic] of R hand & L knee" for the period of February 1, 2004, to August 31, 2004. *Id.* at 137. The purpose or need for the disclosure indicated "Attorney-Roosenfelt." *Id.*

On May 1, 2006, Mr. Harvey filed an administrative claim with the Department of Health and Human Services. He described the basis of his claim as "[f]ailure to diagnose broken bone in right hand. Surgery to repair fell below the standard of care. All took place at [FDIH] . . . during February, March, April, and May of 2004." *Id.* at 138. In the box marked "Date and Day of Accident," Mr. Harvey wrote "May 2004." *Id.* He sought personal-injury damages of $300,000.

By letter dated July 10, 2006, counsel for Mr. Harvey advised that Mr. Harvey was amending the amount of his claim from $300,000 to $2,016,120. Mr. Harvey believed that the Navajo law concept of "*nalyeeh*" required this change. On July 16, 2007, Mr.

Harvey's counsel received a letter dated June 20, 2007, that denied the administrative claim as untimely.

On January 29, 2008, Mr. Harvey filed a complaint in the U.S. District Court for the District of New Mexico. Mr. Harvey alleged that government health care providers had initially misdiagnosed and failed to treat his hand injury and thereafter had committed surgical malpractice. He brought the claim under the FTCA and sought damages of $2,016,120 "pursuant to *nalyeeh*." *Id.* at 19.

On October 6, 2008, Mr. Harvey filed a motion for partial summary judgment. The FTCA provides that, under certain conditions, the United States is liable for torts "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In his motion, Mr. Harvey asked the court to determine that his FTCA action "is governed by the tort law of the Navajo Nation" because the triggering act or omission occurred on the Navajo Reservation. Aplt. Appx. at 36. The Government argued that "law of the place" in the FTCA refers to the "state" and that Arizona law should apply. The district court granted Mr. Harvey's motion on September 29, 2009. The Government sought reconsideration of that decision, which was denied.

On June 12, 2009, the Government filed a motion to dismiss Mr. Harvey's claim relating to the initial failure to diagnose and treat his hand injury, arguing that it was barred by the two-year statute of limitation under 28 U.S.C. § 2401(b). The Government argued that Mr. Harvey knew on March 29, 2004, that his hand was broken and had been previously misdiagnosed but did not file his FTCA administrative claim until May 1,

2006. Mr. Harvey opposed the motion, but the district court granted it in an order filed March 9, 2010. The court held that the "failure-to-diagnose/failure-to-treat claims accrued on April 20, 2004, when [Mr. Harvey] learned that more extensive care (*i.e.*, surgery) was required to treat an injury that health care providers originally believed could be taken care of with painkillers and an ice pack." *Id*. at 251.

Mr. Harvey sought reconsideration, which the district court denied. The court stated that "if anything, the circumstances support a determination that Mr. Harvey's claims of medical malpractice, to the extent those claims are based on FDIH providers' failure to diagnose and treat his fractured hand, accrued on the earlier date of March 29, 2004," but the court let the April 20, 2004, date stand because the Government had not sought reconsideration on that point. *Id.* at 340-41.

On September 21, 2010, the Government moved to dismiss Mr. Harvey's negligent surgery claim for lack of subject matter jurisdiction. The Government argued that even if Navajo law is "the law of the place," Mr. Harvey's action should be dismissed because he had not designated an expert witness who could establish the Government's negligent or otherwise wrongful conduct, as required under the FTCA. Mr. Harvey contested the motion. On May 4, 2011, the district court issued an order notifying the parties that it intended to convert the Government's motion to dismiss for lack of jurisdiction into a summary judgment motion.

Meanwhile, on September 27, 2010, Mr. Harvey filed a motion for default judgment, arguing that the Government had filed its answer one day late approximately

-7-

30 months earlier. The Government opposed the motion, and the district court denied it in an order filed April 22, 2011.

On June 30, 2011, the district court granted summary judgment for the Government. The court determined that Mr. Harvey, under the facts of his case, could not proceed "on his claim of medical negligence" (negligent surgery) because he had failed to proffer any expert medical evidence. *Id.* at 374. The district court explained that it had entered a scheduling order on September 25, 2008, that required Mr. Harvey to disclose "any expert witness to be used by Plaintiff at trial and to provide expert reports . . . no later than December 23, 2008." *Id.* at 33. On January 26, 2009, the court granted a joint motion from the parties requesting, among other things, an extension of Mr. Harvey's expert disclosure deadline to May 18, 2009, and closing discovery generally on July 15, 2009. Mr. Harvey twice moved for further extensions of this deadline, but those requests were denied. He filed an unopposed motion to reschedule the trial, which the district court granted—but that motion did not include another request for extension of the expert discovery deadline. Mr. Harvey "never disclosed an expert witness in support of his medical malpractice claim." *Id.* at 377.

In its order granting summary judgment for the Government, the district court rejected Mr. Harvey's argument that he had demanded *nalyeeh* under Navajo law and therefore expert testimony was not required. The district court further rejected Mr. Harvey's claim that *nalyeeh* has "no requirement for a showing of negligence in the Anglo sense of that legal concept." *Id.* at 381. The court stated that "it strongly appears

that expert medical testimony is necessary to establish the diagnosis and treatment of a medical condition under Navajo law." *Id.* at 385. But, "to the extent that Navajo law is silent," the district court determined that the Navajo Nation Code "provides that the issue may be decided according to comity with reference to the laws of the state in which the matter in dispute may have arisen." *Id.* at 386 (quotations omitted).

The district court then turned to Arizona law, stating that "'Arizona courts have long held that the standard of care normally must be established by expert medical testimony.'" *Id.* (quoting *Seisinger v. Seibel*, 203 P.3d 483, 492 (Ariz. 2009)). The district court recognized there is an exception for matters of common knowledge but found the exception did not apply in this case. The court further rejected Mr. Harvey's invocation of the *res ipsa loquitur* doctrine. The court found the doctrine inapplicable because Mr. Harvey had "failed to demonstrate that his hand injury is a matter of common knowledge among laymen or medical experts." *Id.* at 389.

Mr. Harvey also argued that expert testimony was irrelevant because there was no admissible evidence regarding what happened during the surgery. Rejecting that argument, the district court explained that "it is the Plaintiff that bears the burden to prove the essential elements of his medical malpractice claim by a preponderance of the evidence." *Id.* at 389. Accordingly, the court held that "[i]n the absence of expert testimony, there are no genuine issues of material fact on Plaintiff's FTCA medical malpractice claim and Defendant is entitled to judgment as a matter of law." *Id.* at 388.

Mr. Harvey filed a notice of appeal on August 18, 2011.

## III.   DISCUSSION

On appeal, Mr. Harvey argues that the district court erred when it (1) denied his motion for a default judgment; (2) held that his misdiagnosis claim was time-barred because it accrued on April 20, 2004, the date he learned his broken hand would require surgery;[1] and (3) granted summary judgment to the Government regarding negligent surgery due to Mr. Harvey's failure to produce expert medical testimony.  Mr. Harvey also argues in his reply brief that, because the Government did not cross-appeal, we should not address its argument that the district court erred in determining Navajo law is the "law of the place" under the FTCA.

We review a district court's denial of a motion for default judgment for abuse of discretion.  *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010).  Whether a plaintiff has "file[d] an FTCA claim within the two-year statute of limitations period is a matter we review de novo."  *Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1266 (10th Cir. 2002).  We also review a district court's grant of summary judgment de novo.  *Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 662 F.3d 1275, 1284 (10th Cir. 2011).

---

[1]Mr. Harvey prefers that his case not be broken into misdiagnosis and negligent surgery claims but instead be united under the concept of *nalyeeh*, with the relevant injury for accrual being when "bad feelings" developed.  Nevertheless, he also argues that the district court erred in its analysis of when a "failure to timely diagnose case" should accrue. *See* Aplt. Br. 8-15.  His complaint also alleges under *nalyeeh* that government employees breached the appropriate standard of care in failing to promptly diagnose and properly treat his condition and that "[t]he surgeon fell below the standard of care in the timing, operative procedures, and the aftercare."  Aplt. Appx. at 17.  Under these circumstances, we find no error in the district court's separation of the claims.

-10-

We affirm the district court's denial of the default judgment motion and its dismissal of Mr. Harvey's claims. We conclude that the district court erred in holding the misdiagnosis claim was time-barred, but we affirm dismissal of that claim and the negligent surgery claim because expert evidence is needed for both and because Mr. Harvey failed to present an expert. We do not consider whether the district court was correct in its determination of the "law of the place" because the outcome is the same whether Navajo or Arizona law applies.[2]

## A. *Default Judgment*

"[D]efault judgments are not favored by courts." *Katzson Bros., Inc. v. U.S. E.P.A.*, 839 F.2d 1396, 1399 (10th Cir. 1988). Default judgments against the United States are especially disfavored. *See* Fed. R. Civ. P. 55(d); *Stewart v. Astrue*, 552 F.3d 26, 28 (1st Cir. 2009) ("The disfavor in which [default] judgments are held is especially strong in situations where . . . the defendant is the government.").

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

---

[2]Whether Arizona law or Navajo law is the "law of the place," such law would include the Arizona or Navajo choice-of-law rules, respectively. *See Richards v. United States*, 369 U.S. 1, 10-14 (1962) (holding that "law of the place" in the FTCA refers to the "whole law of the place" where the acts or omissions occurred, including choice-of-law rules). Because we conclude that the outcome of this case would be the same under Arizona or Navajo law, we need not analyze the choice of law rules of these jurisdictions.

-11-

party's default." In this case, the Government filed its response to Mr. Harvey's complaint one day beyond the 60-day deadline provided in Rule 12(a)(2) of the Federal Rules of Civil Procedure. Thus, Mr. Harvey argues that default judgment must be entered pursuant to Rule 55(a).

We hold that Mr. Harvey forfeited his right to seek a default judgment by waiting two and a half years before filing his motion. *See Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) ("[F]orfeiture is the failure to make the timely assertion of a right." (quotations omitted)). *Kontrick* held that a party forfeited his right to assert the untimeliness of an amended complaint by failing to raise the issue until after that complaint was adjudicated on the merits. *Id.* at 458. Because Mr. Harvey allowed over two years of active litigation to pass before seeking a default judgment for a one-day tardy answer, he forfeited his default judgment argument. Even if Mr. Harvey did not forfeit this issue, the district court did not abuse its discretion in denying his motion.

Rule 55(d) of the Federal Rules of Civil Procedure also blocks Mr. Harvey's argument. It provides that default judgments may be entered against the government "only if the claimant establishes a claim or right to relief by evidence that satisfies the court." Because, as the district court concluded and as we conclude below, Mr. Harvey did not provide satisfactory expert evidence to establish his claims, he is not entitled to default judgment.

## B. *FTCA Liability*

We next review some basic requirements for FTCA liability. "[T]he United

-12-

States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "[T]he United States can be sued only to the extent that it has waived its immunity." *United States v. Orleans*, 425 U.S. 807, 814 (1976). "We should . . . have in mind that the [FTCA] waives the immunity of the United States and . . . we should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver . . . ." *Smith v. United States*, 507 U.S. 197, 203 (1993) (quotations omitted).

The FTCA waives sovereign immunity and allows private parties to sue the United States government under defined conditions. *See United States v. Kubrick*, 444 U.S. 111, 117-18 (1979). As a threshold matter, timeliness "is one of the conditions of the government's waiver of sovereign immunity under the FTCA, and [a federal] court lacks subject matter jurisdiction to proceed under the FTCA if a plaintiff fails to satisfy the FTCA's timing requirements set forth in § 2401(b)." *Franklin Sav. Corp. v. United States*, 385 F.3d 1279, 1287 (10th Cir. 2004). Under 28 U.S.C. § 2401(b), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues."

"[D]etermination of when a claim . . . accrues is a matter of federal, not state, law." *Kynaston v. United States*, 717 F.2d 506, 508 (10th Cir. 1983). "Under the FTCA a cause of action accrues at the time the plaintiff is injured, or, in a medical malpractice action, when the plaintiff has discovered both his injury and its cause." *Id.*; *see also*

-13-

*Kubrick*, 444 U.S. at 120. The injury must arise from the negligence or wrongful act or omission of a government employee, not solely from a condition that existed before the medical treatment at issue. *See* 28 U.S.C. § 1346(b)(1).

If an FTCA claim is timely, the conditions for waiver of sovereign immunity further include that the alleged "injury" must have been "caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id*. Thus, "the FTCA mandates application of [the law of the place] to resolve questions of substantive liability." *Cannon v. United States*, 338 F.3d 1183, 1192 (10th Cir. 2003).

## C. *Timeliness of the Misdiagnosis Claim*

The Government acknowledges that Mr. Harvey's negligent surgery claim was timely but argues that his misdiagnosis claim is barred because he knew of his injury and its cause more than two years before he filed his administrative claim on May 1, 2006. The district court agreed, initially holding that "Mr. Harvey's failure-to-diagnose/failure-to-treat claims accrued on April 20, 2004, when he learned that more extensive care (*i.e.*, surgery) was required to treat an injury that health care providers originally believed could be taken care of with painkillers and an ice pack." Aplt. Appx. at 251.

Mr. Harvey filed a motion for reconsideration. He argued that he could not have known whether the delay in treatment caused the need for surgery. He further argued that a reasonable person could conclude that the fracture had always required surgery.

-14-

The district court's reasoning changed when it responded to Mr. Harvey's motion for reconsideration. It then concluded that "it would have been March 29, 2004 that Mr. Harvey would or should have discovered the claimed injury, *i.e.*, that a failure to diagnose a fracture caused improper healing of his hand." *Id.* at 340. Despite this change in reasoning and change in dates, the district court stated that

> because the [G]overnment has not asked the Court to reconsider its earlier accrual-date finding, and it would be unfair to Mr. Harvey for the Court *sua sponte* at this point to deem March 29, 2004 the date of accrual of his first set of medical malpractice claims, the Court will stand by its earlier conclusion that Mr. Harvey's claims, to the extent they arose from a failure to diagnose and operate, accrued on April 20, 2004.

*Id.* at 341.

Under either analysis, the district court erred in concluding that Mr. Harvey's misdiagnosis claim was time-barred. Both Mr. Harvey and the district court relied on reasoning from the Ninth Circuit regarding the factors that must be considered for accrual when a plaintiff alleges, as Mr. Harvey does here, that a misdiagnosis and consequent lack of proper treatment produced a more serious condition than the original illness or injury.

> When a physician's failure to diagnose, treat, or warn a patient results in the development of a more serious medical problem than that which previously existed, identification of both the injury and its cause may be more difficult for a patient than if affirmative conduct by a doctor inflicts a new injury. Where a claim of medical malpractice is based on the failure to diagnose or treat a pre-existing condition, the injury is not the mere undetected existence of the medical problem

-15-

at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. *Rather, the injury is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.* In this type of case, it is *only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued for purposes of section 2401(b).*

*Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983) (emphases added); *see also Hughes v. United States*, 263 F.3d 272, 276-77 (3rd Cir. 2001); *Green v. United States*, 765 F.2d 105, 108-09 (7th Cir. 1985). We agree with this approach but disagree with the district court's application of it to Mr. Harvey's misdiagnosis claim.

The injury alleged in Mr. Harvey's complaint was "that his hand would never function properly and that it would always hurt" due to medical malpractice. Aplt. Appx. at 15. He alleged his hand would have healed with proper care—thus, he alleged that doctors at FDIH caused a more serious condition to develop in his hand.

We apply the *Augustine* standard. Before Mr. Harvey's misdiagnosis claim could accrue, he must have been aware—or through the exercise of reasonable diligence should have been aware—that the lack of proper treatment had caused his broken hand to develop into a more serious condition. *See Augustine*, 704 F.2d at 1078. On March 29, 2004, Mr. Harvey discovered that he had a broken hand, but there is no evidence to suggest that this discovery showed him that the lack of proper treatment had further damaged his hand beyond the injury caused by his fall. On April 20, 2004, he discovered

-16-

he needed surgery. But, again, nothing in the record suggests that this should have informed him that he had developed a more serious condition since the fall. A reasonable person in his position could not have known whether surgery would have been necessary even if there had been no misdiagnosis.[3]

This reasoning is consistent with Tenth Circuit precedent. In misdiagnosis cases, we have consistently held that the relevant injury for accrual is the injury that is caused by the misdiagnosis and lack of treatment, not the pre-existing injury that brought the patient to the doctor's door. *See, e.g.*, *Arvayo v. United States*, 766 F.2d 1416, 1419-22 (10th Cir. 1985); *Gustavson v. United States*, 655 F.2d 1034, 1035 (10th Cir. 1981).

For example, in *Gustavson*, when Mr. Gustavson was a child, he visited military doctors regarding a bedwetting problem. 655 F.2d at 1035. The doctors misdiagnosed anxiety as the cause of the problem. *Id.* Instead, vesico-ureteral reflux and a resulting infection had caused the problem. *Id.* Civilian doctors eventually informed Mr. Gustavson of the mistake. *Id.* at 1035-36. They told him that corrective surgery could have been performed years earlier and that the untreated and long-continued reflux had caused serious damage to his kidneys. *Id.* at 1036.

We held that Mr. Gustavson's claim accrued under 28 U.S.C. § 2401(b) when he learned from the civilian doctors that his kidneys were damaged by the misdiagnosis and

---

[3]The medical record from Mr. Harvey's visit to FDIH on March 30, 2004, notes that the break is "2 months old not possible to reduce now." Aplt. Appx. at 133. But nothing in the record indicates that Mr. Harvey was told this or that it would have been possible to reduce the fracture if it had been treated earlier.

-17-

consequent failure to correct the ureter disorder at an earlier stage. *Id.* at 1036-37. Mr.

Gustavson had two years from that point to file a claim, but he failed to do so. *Id.* at

1036. We rejected Mr. Gustavson's argument that there was not accrual until he later

realized that the kidney damage was irreversible. *Id.* We explained that "a claimant is

aware of the injury once he or she has been apprised of the general nature of the injury.

Lack of knowledge of the injury's permanence, extent, and ramifications does not toll the

statute." *Id.* Thus, when Mr. Gustavson was apprised of his kidney damage that became

worse from lack of treatment, his claim accrued and the FTCA two-year limitation period

began to run. *See id.*

Likewise in this case, the relevant injury is the injury caused by misdiagnosis and

lack of treatment, not the original broken hand.[4] The district court improperly equated

the necessity of surgery and the knowledge that he had not received proper treatment with

knowledge of the development of a more serious condition.

Mr. Harvey knew his hand was broken beginning on March 29, 2004, but that was

not knowledge that his hand had developed a more serious condition beyond the initial

fracture due to the lack of prompt treatment. On April 20, 2004, he was told he would

need surgery. But, again, that did not give him knowledge that surgery would have been

---

[4]Mr. Harvey mistakenly argues that his misdiagnosis claim could accrue only when he allegedly realized his hand would never fully heal. He did not have to know his injury was permanent. But he did have to know that his hand had developed a more serious condition because of the lack of proper treatment, or a court must hold that he reasonably should have known it.

-18-

unnecessary before the delay in proper treatment. Nothing in the record shows that Mr. Harvey knew or reasonably should have known before May 2004 that his hand had developed a more serious condition due to the misdiagnosis and consequent delay in treatment.

We therefore hold that Mr. Harvey's misdiagnosis claim, originally filed as an administrative claim on May 1, 2006, is not time-barred under 28 U.S.C. § 2401(b). However, as explained below, we affirm the district court's dismissal of that claim on the same ground that the district court relied upon for dismissal of the negligent surgery claim.[5]

## D. *Expert Evidence Required on Mr. Harvey's Claims*

We turn to whether Mr. Harvey's claims can survive summary judgment without

---

[5]"We have discretion to affirm on any ground adequately supported by the record." *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). "In exercising that discretion we consider whether the ground was fully briefed and argued here and below, whether the parties have had a fair opportunity to develop the factual record, and whether, in light of . . . [the] uncontested facts, our decision would involve only questions of law." *Id.* (citations omitted) (quotations omitted); *see also United States v. Damato*, 672 F.3d 832, 844 (10th Cir. 2012) (concluding it was appropriate to address an alternative ground that had not been argued by the parties because "the second and third *Elkins* factors . . . weigh[ed] in favor of considering the alternative ground").

The alternative ground on which we affirm the dismissal of Mr. Harvey's misdiagnosis claim—that expert evidence is required here to prove medical malpractice—was fully briefed on appeal and in the district court as the ground on which the negligent surgery claim failed. Additionally, in light of the uncontested facts, our consideration of this alternative ground involves only a question of law. Finally, we note that Mr. Harvey had a fair opportunity to develop the factual record concerning his misdiagnosis claim because the deadlines for presenting an expert witness and conducting discovery expired well before the district court dismissed his claim.

-19-

expert evidence.  As noted above, "the FTCA mandates application of [the law of the place] to resolve questions of substantive liability."  *Cannon*, 338 F.3d at 1192.  In most FTCA cases, "law of the place" means the law of the state where the act or omission occurred.  *See, e.g., FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.").  Because of the "law of the place" language, federal courts generally look to state law to determine whether an FTCA malpractice case requires expert evidence.  *See Gipson v. United States*, 631 F.3d 448, 451-52 (7th Cir. 2011); *Cleveland ex rel. Cleveland v. United States*, 457 F.3d 397, 403 (5th Cir. 2006).

All pertinent events in this case occurred in Arizona on the Navajo Reservation, and the district court decided that Navajo law was the "law of the place."  But in ruling that Mr. Harvey's surgical malpractice claim should be dismissed, the court relied on Arizona law that calls for the presentation of expert testimony to establish a medical malpractice claim.  The court did so because, in its view, Navajo law likely requires expert evidence for such a claim and, insofar as Navajo law is silent on the issue, Navajo courts would look to Arizona law as a matter of comity.

Not surprisingly, Mr. Harvey disagrees with the district court's analysis and argues that the Navajo law of *nalyeeh* governs his claim and that *nalyeeh* does not require him to prove "intent, causation, fault, or negligence."  Aplt. Reply Br. at 11.  He also contends that the Government cannot challenge the district court's "law of the place"

-20-

ruling because it did not cross-appeal.

We need not decide whether the phrase "law of the place" in the FTCA requires application of Navajo law or Arizona law because the outcome is the same under both— Mr. Harvey's failure to provide expert evidence on the issues of injury, causation, negligence, or wrongful act or omission rendered summary judgment appropriate on both his misdiagnosis and surgical malpractice claims under Navajo or Arizona law.

Further, although we understand Navajo Nation Supreme Court precedent to require expert proof in cases like this one, even if Mr. Harvey were correct that his *nalyeeh* claim does not require proof of causation, negligence, or fault, the FTCA requires proof of those elements, and such proof calls for expert evidence here.

Accordingly, we first address Mr. Harvey's claims under Arizona law and then consider Navajo law. We conclude in both instances that summary judgment was appropriate on Mr. Harvey's substantive claims.

**1.  *Arizona Law as Law of the Place Under the FTCA***

Although Mr. Harvey argues that Navajo law is the law of the place and thus should control liability under the FTCA, he argues, in the alternative, that the district court was incorrect in dismissing his negligent surgery claim based upon the requirement under Arizona law that a plaintiff must present expert evidence to establish liability in a

medical malpractice case.[6]

Both the misdiagnosis and negligent surgery claims are allegations of medical malpractice. The Arizona Supreme Court has explained that "[i]n medical malpractice actions, as in all negligence actions, the plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages." *Seisinger v. Siebel*, 203 P.3d 483, 492 (Ariz. 2009) (en banc). "The yardstick by which a physician's compliance with his duty is measured is commonly referred to as 'the standard of care.'" *Id.* (quotations omitted). "Arizona courts have long held that the standard of care normally must be established by expert medical testimony." *Id.* "Arizona courts have also long held that expert testimony on the standard of care can be presented only by a physician." *Id.* The district court held that this latter requirement, as codified in Ariz. Rev. Stat. § 12-2604, is substantive in nature. *Id.* at 493.

Arizona law further provides that "[o]rdinarily, a plaintiff in a medical malpractice lawsuit must prove the causal connection between an act or omission and the ultimate injury through expert medical testimony, unless the connection is readily apparent to the trier of fact." *Benkendorf v. Advanced Cardiac Specialists Chartered*, 269 P.3d 704, 706 (Ariz. Ct. App. 2012) (quotations omitted).

Mr. Harvey did not produce a medical expert. He argues that under the facts of

---

[6]Technically the district court did apply Navajo law and looked to Arizona law under principles of comity, but Mr. Harvey argues Navajo law would not consider Arizona law in the context of this case.

this case Arizona law does not require an expert because (1) the surgical medical record

is so unreliable that expert analysis of it would be useless, and (2) *res ipsa loquitur*

applies.[7]

a. ***Expert Testimony Required***

Arizona law regarding evidence in medical malpractice claims would require

expert testimony to establish both Mr. Harvey's misdiagnosis and his negligent surgery

claims.

First, as to the misdiagnosis claim, although it may be readily apparent that the

misdiagnosis was either negligent or wrongful, it is not readily apparent that the

misdiagnosis and lack of treatment caused injury to Mr. Harvey's hand beyond the initial

fall. The radiology report notes a fracture from the date Mr. Harvey first arrived at

FDIH. Mr. Harvey was not informed of or treated for a broken hand for an extended

period. A reasonable juror could determine that this misdiagnosis involved negligent or

---

[7]*Res ipsa loquitur* is a doctrine that

> allows a trier of fact to draw an inference of negligence when
> (1) the injury is "of a kind that ordinarily does not occur in
> the absence of negligence," (2) the injury is "caused by an
> agency or instrumentality subject to the control of the
> defendant," and (3) the claimant is not "in a position to show
> the particular circumstances that caused the offending agency
> or instrumentality to operate to her injury." *Lowrey v.
> Montgomery Kone, Inc.*, 202 Ariz. 190, ¶ 7, 42 P.3d 621, 623
> (App. 2002).

*Sanchez v. Old Pueblo Anesthesia*, 183 P.3d 1285, 1289 (Ariz. Ct. App. 2008).

wrongful conduct without the aid of expert testimony. *See* David H. Kaye, *The New Wigmore: A Treatise on Evidence*, Expert Evidence § 2.5 ("[I]n certain rare circumstances, expert testimony is not necessary in a medical negligence case because the alleged acts of negligence clearly lie within the range of the jury's common knowledge and experience." (quotations omitted)).

But whether that misdiagnosis and the delay in proper treatment caused some further injury to the hand—beyond the injury caused by the initial fall on the ice—is not readily apparent to a person without professional medical training. Mr. Harvey needs an expert to prove that the misdiagnosis and failure to treat produced a more serious injury to his hand.

Second, as to the surgical malpractice claim, Mr. Harvey argues that the medical record regarding his surgery is so inadequate that it offers no assistance in evaluating his claim. He contends that, without the benefit of a reliable record, a layperson "is in as good a position as a medical expert to determine what occurred during the surgery," and "Fed. R. Evid. 702 prohibits the use of an expert witness in this circumstance." Aplt. Br. at 26.

Even accepting Mr. Harvey's allegation that the record of the surgery is unreliable, his arguments fail. An expert could and should analyze other evidence of the surgery and other treatment provided—including x-rays and medical records from Mr. Harvey's multiple visits to FDIH both before and after his surgery, and the testimony of treating

-24-

physicians and other health care providers.[8]

It is not readily apparent to a lay person whether the surgery performed on Mr. Harvey's hand was negligent or wrongful or that it caused injury. Mr. Harvey claims he was told his hand would return to normal within a year. But such a statement does not establish that the doctors caused an injury through some negligent or wrongful conduct or omission.

As to both claims, even competent medical care is not always fully successful at fixing injuries. Considering the facts of this case, a lay jury cannot determine whether Mr. Harvey's hand was damaged by inadequate medical care without the assistance of qualified expert opinion. Reaching such an opinion demands professional analysis of the severity of his initial injury, the probability of recovery with proper treatment, the medical effects of delaying proper treatment, the propriety of surgery, the proper standard of care for the surgery, and whether that standard was met. The misdiagnosis claim would require expert testimony to show cause and injury, and the negligent surgery claim would require expert testimony to establish cause, injury, and negligence or other wrongful conduct or omission.

---

[8]Contrary to Mr. Harvey's assertions, Rule 702 of the Federal Rules of Evidence would allow the testimony of a qualified expert if it would "assist the trier of fact to understand the evidence or to determine a fact in issue" and is "based upon sufficient facts or data, . . . [and] is the product of reliable principles and methods" that have been applied "reliably to the facts of the case." In addition, Rule 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."

Without a medical expert concluding there were injurious consequences from the misdiagnosis, delay of treatment, or some other negligent or wrongful act or omission during Mr. Harvey's surgery or other treatment, no jury or court could reliably determine if government employees caused injury to Mr. Harvey's hand. Thus, under the facts of this case, Mr. Harvey was required to produce an expert under Arizona law. *See Benkendorf*, 269 P.3d at 706.

### b. *Res Ipsa Loquitur Not Applicable*

Mr. Harvey's *res ipsa loquitur* argument under Arizona law fails for similar reasons. He asserts that he should benefit from a rebuttable presumption that his hand was injured by the government doctors' negligence because "[t]he surgery was under the complete and exclusive control of the Defendant," and "[t]he ordinary outcome of this surgery is complete recovery." Aplt. Br. at 29.

But Mr. Harvey cannot show without an expert that complete recovery would be the normal outcome of his surgery had the proper standard of care been met. To do so, he would need a medical expert to testify as to the severity of his pre-existing injury, the potential for recovery, the proper standard of care in his surgery, and the likelihood that it was met. The district court explained that "'[r]es ipsa loquitur* is applicable only when it is a matter of common knowledge among laymen or medical experts, or both, that the injury would not ordinarily have occurred if due care had been exercised.'" Aplt. Appx. at 389 (alteration omitted) (quoting *Sanchez v. Old Pueblo Anesthesia*, 183 P.3d 1285, 1289 (Ariz. Ct. App. 2008)). Mr. Harvey's assertion that he was told his hand would get

-26-

better within a year is insufficient to make that showing.

Furthermore, under Arizona law, *res ipsa loquitur* is used to establish negligence, not injury or cause. *See Sanchez*, 183 P.3d at 1289 (explaining that *res ipsa loquitur* "allows a trier of fact to draw an inference of negligence" under certain conditions). One of the elements Mr. Harvey must show to benefit from that doctrine is that "the injury is caused by an agency or instrumentality subject to the control of the defendant." *Id.* (quotations omitted). Thus, Mr. Harvey would need expert testimony to establish injury and cause before he could benefit from this doctrine. *Res ipsa loquitur* cannot circumvent the need to show injury and cause, *see id.*, or the consequent requirement to present expert testimony under the facts of this case.

### c. *Remand to Produce Experts Not Warranted*

Mr. Harvey argues that if we hold expert testimony is necessary, we should remand and allow him to provide such testimony. But Mr. Harvey was already given a chance to provide experts before the district court. The district court ordered Mr. Harvey to identify any expert witness by December 23, 2008. The deadline was later extended to May 18, 2009, long before the dismissal of both his misdiagnosis and negligent surgery claims.[9] "Although [Mr. Harvey] twice moved for an extension of this discovery deadline, the requested extensions were denied." Aplt. Appx. at 377. Because Mr.

---

[9]Mr. Harvey's misdiagnosis claim was dismissed as time-barred on March 9, 2010. Summary judgment against the rest of his substantive claims was granted on June 30, 2011.

Harvey did not comply with the district court's order, which extended the deadline by nearly five months, we do not agree with Mr. Harvey's argument that equitable principles demand remand.

### d. *Conclusion Under Arizona Law*

For the foregoing reasons, the district court did not err when it held under Arizona law that Mr. Harvey's negligent surgery claim required medical expert testimony. Mr. Harvey's misdiagnosis claim would also require expert testimony to show cause and injury beyond the initial injury to his hand. If the law of the place were Arizona law, it would therefore be proper for the district court to dismiss those claims on summary judgment because Mr. Harvey failed to provide experts for trial.

## 2. *Navajo Law as the Law of the Place Under the FTCA*

If, as Mr. Harvey argues, Navajo law applies, the result is the same.

### a. *Nalyeeh as Applied in Navajo Courts*

Mr. Harvey asserts his claim under *nalyeeh.* The Navajo Nation Supreme Court has explained that "[g]enerally, nalyeeh means compensation for an injury. However, it has a deeper meaning of a demand to make right for an injury and an invitation to negotiate what it will take so that an injured party will have no hard feelings." *Benally v. Big A Well Service, Co.*, No. SC-CV-27-99, ¶ 22 (Nav. Nat. Sup. Ct. Aug. 28, 2000) (quotations omitted). *Nalyeeh* is thus not a particular cause of action with specific elements to prove—it is more akin to "a form of compensation or reparation" that may be demanded in the context of any number of claims (including negligence or wrongful

-28-

conduct or omission) when "a Navajo was injured by the act of another." *Largo v. Eaton Corp.*, No. SC-CV-09-99, ¶ 25 (Nav. Nat. Sup. Ct. Apr. 11, 2001). It "includes the responsibility to respectfully talk out disputes" and is used "to assess the adequacy of damages in tort claims." *Allstate Indemnity Co. v. Blackgoat*, No. SC-CV-15-01, ¶ 27 (Nav. Nat. Sup. Ct. Jan. 12, 2005). It is a "process for restoring relationships between the injured party and the tortfeasors." *Joe v. Black*, No. SC-CV-62-06, ¶ 18 (Nav. Nat. Sup. Ct. Nov. 29, 2007).

Mr. Harvey argues that *nalyeeh* "is not concerned with intent, causation, fault, or negligence" and therefore requires no expert testimony.[10] Aplt. Reply Br. at 11 (quotations omitted). He argues that the relevant injury we should consider is the "bad feelings" that arose when he realized his hand would not get better.

We understand from Navajo Nation Supreme Court precedent that a Navajo court would consider issues of negligence, cause, and fault in a case like the one before us. *See Joe*, No. SC-CV-62-06 at ¶¶ 25-26 (explaining that negligence is "part and parcel of *nalyeeh*" and that "the Navajo Nation Code mandates the application of negligence principles"); *Jensen v. Giant Indus., Ariz.*, No. SC-CV-51-99 (Nav. Nat. Sup. Ct. Jan. 22, 2002) ("As a general rule, the tort of negligence has four components—a duty to the person injured, a breach of that duty, causation, and resulting damages.").

_____

[10]This statement is at odds with Mr. Harvey's complaint, which asserts his claim under *nalyeeh* and argues that government doctors breached the proper standard of care in multiple respects and caused damage to his hand.

Moreover, even Mr. Harvey does not argue that *nalyeeh* requires no showing of injury. Indeed, the Navajo law expert quoted by Mr. Harvey, former Chief Justice Robert Yazzie, stated that *nalyeeh* "is a demand that the victim be made whole for an injury." Aplt. Reply Br. at 11 (quotations omitted). It is the injury that produces the bad feelings for which Mr. Harvey seeks compensation under *nalyeeh*. *See id.*

As discussed previously, without testimony from a medical specialist, a layperson cannot reliably determine if Mr. Harvey is suffering from anything more than the unavoidable effects of his initial fall on the ice. The Navajo Nation Supreme Court has stated that *nalyeeh* may be demanded when "a Navajo was injured by the act of another." *Benally*, No. SC-CV-27-99 at ¶ 22. Without expert testimony, Mr. Harvey cannot reliably show injury or whether the injury was due to "the act of another." *See id.*

The Navajo Nation Supreme Court has recognized the need for expert testimony where a layperson is not qualified to provide a reliable analysis. *See Baldwin v. Chinle Family Court*, No. SC-CV-37-08, 5 (Nav. Nat. Sup. Ct. Oct. 30, 2008). The *Baldwin* Court reversed the findings of a family court. The Supreme Court explained that "[n]o evidence was produced before the Court that the mother's *health care providers had been consulted as to inform the Court* of Ms. Baldwin's present ability to care for the child or revealed any current condition which suggested an on-going inability of the mother to care for her child." *Baldwin*, No. SC-CV-37-08 at 3 (emphasis added). The Court further explained that "diagnosis of an individual *requires professional expertise*." *Id.* at 5 (emphasis added).

In Mr. Harvey's case, the district court surmised that "[p]ursuant to *Baldwin*, it strongly appears that expert medical testimony is necessary to establish the diagnosis and treatment of a medical condition under Navajo law." Aplt. Appx. at 385. We agree with the district court. Furthermore, when medical analysis would be beyond the scope of common knowledge, *Baldwin* indicates that medical experts are necessary under Navajo law.

Because this case requires medical analysis beyond the scope of common knowledge to show "injury by the act of another," *see Benally*, No. SC-CV-27-99 at ¶ 22, Navajo law indicates that Mr. Harvey's claim would require expert testimony.

### b. *The FTCA and Mr. Harvey's View of Nalyeeh*

Even if *nalyeeh* does not require proof of cause, fault, or negligence, as Mr. Harvey contends, he cannot succeed on an FTCA claim without showing that a government employee caused his injury through some "negligent or wrongful act or omission." 28 U.S.C. § 1346(b)(1). Thus, if Mr. Harvey cannot show that he received injury to his hand through the negligent or wrongful act or omission of a government health care provider, the FTCA itself would bar recovery, notwithstanding the applicable "law of the place." *See Laird v. Nelms*, 406 US 797, 799 (1972) (citation omitted) (quotations omitted) ("*Regardless of state law characterization, the [FTCA] itself precludes the imposition of liability* if there has been no negligence or other form of misfeasance or nonfeasance on the part of the Government." (emphasis added)). Because proving injury and cause would require scientific or specialized medical knowledge that

-31-

would be helpful to a lay jury, Rules 701 and 702 of the Federal Rules of Evidence would prohibit a layperson from offering such evidence but would allow a properly qualified expert to do so.

Thus, even if we were to accept Mr. Harvey's arguments regarding Navajo law requirements, he still could not succeed on his substantive claims without providing a medical expert.

## IV.    CONCLUSION

We affirm the district court's denial of Mr. Harvey's default judgment motion because Mr. Harvey waited over two years to file the motion, and he cannot establish his claims against the Government with satisfactory evidence.  We conclude that the district court erred when it held that Mr. Harvey's misdiagnosis claim was time-barred.  We further conclude that regardless of whether the law of the place is Arizona or Navajo law, Mr. Harvey cannot prove his claims without expert testimony because such testimony is necessary to show that government employees caused additional injury to Mr. Harvey's hand after his fall through negligence or wrongful act or omission.  The district court gave Mr. Harvey ample opportunity to provide medical experts, and Mr. Harvey failed to do so.  We affirm dismissal of those claims and therefore affirm the district court's judgment.