**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 13, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN BRADIN,

     Petitioner - Appellant,

v.

LINDA THOMAS, Warden; UNITED
STATES BOARD OF PROBATION &
PAROLE,

     Respondents - Appellees.

Nos. 19-3093 & 19-3190
(D.C. No. 5:19-CV-03041-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **BACHARACH**, Circuit Judges.
_____

John Bradin, a federal prisoner proceeding pro se, appeals from the district

court's denial of his motion for a temporary restraining order and preliminary

injunction (No. 19-3093) and its final judgment on his 28 U.S.C. § 2241 petition for a

writ of habeas corpus (No. 19-3190). We have procedurally consolidated the two

appeals for disposition. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

In 1975, Mr. Bradin was convicted in the United States District Court for the Western District of Missouri on federal bank robbery charges and sentenced to fifteen years' imprisonment. He was released on parole in 1980. Between January 1986 and July 1989, Mr. Bradin was arrested for three parole violations, which resulted in two additional terms of confinement. He was released on parole again in May 1991.

In September 1992, the United States Parole Commission (USPC)[1] issued a warrant for Mr. Bradin's arrest for parole violations based on charges in two separate criminal actions pending in Missouri state court. In a memorandum to the warrant, the USPC instructed that if Mr. Bradin was already in state custody (which he was), the warrant should not be executed, but a detainer should be placed instead. The USPC supplemented the warrant in 1993 with information regarding Mr. Bradin's convictions in Missouri state court, where he was sentenced to twenty-five years' imprisonment for his crimes in the two criminal actions.

In November 2018, after Mr. Bradin finished serving his state sentences, the United States Marshals Service executed the 1992 warrant that had been lodged as a detainer and took him into federal custody. He was initially housed at the Leavenworth Detention Center in Leavenworth, Kansas. Upon execution of the

---

[1] In naming the respondents to his § 2241 petition, Mr. Bradin incorrectly identified the USPC as the "United States Board of Probation and Parole."

warrant, the USPC was authorized to revoke his parole and impose up to 1,602 days of confinement for his parole violations.

Before the USPC held a parole revocation hearing, Mr. Bradin filed his § 2241 habeas petition in the United States District Court for the District of Kansas. He sought release from custody or to a halfway house based on a number of grounds for relief regarding the use of the detainer, the delay in providing a revocation hearing, his inability to serve his state and federal sentences concurrently, and his eligibility for compassionate release under the First Step Act of 2018. He also filed a motion for a temporary restraining order (TRO) and a preliminary injunction (PI) concerning (1) respondents' alleged refusal to mail his § 2241 petition and (2) a box of his personal property the Missouri Department of Corrections held that allegedly included evidence both crucial to his petition and showing that the Social Security Administration unlawfully seized his social security benefits for over 26 years, which he wanted to use to hire counsel of choice.

The district court denied the TRO/PI motion and appointed the Kansas Federal Public Defender (FPD) to represent Mr. Bradin. Despite the FPD's representation, Mr. Bradin continued filing pro se motions. He also filed a pro se appeal of the order denying the TRO/PI motion. In some of his pro se motions, Mr. Bradin indicated he did not want the FPD as his counsel and asked the court to order the release of his Social Security funds so he could hire his own attorney. After a status conference on the issue of appointed counsel, the court ordered that if Mr. Bradin wished to continue with the FPD, he had to notify the court in writing by a date certain or the

3

court would withdraw the appointment. When Mr. Bradin did not respond, the court withdrew the appointment.

Eventually, the district court ruled on the § 2241 petition, denying it in part and dismissing it in part, and entered a separate judgment. Mr. Bradin filed a notice of appeal from the separate judgment. We defer further discussion of the district court's rulings until our analysis of Mr. Bradin's appellate arguments.

## II. DISCUSSION

Mr. Bradin's pro se appellate brief lacks clarity.[2] But we must afford it (and his other pro se filings) a liberal construction, albeit without acting as his attorney. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). So doing, we discern the following issues in his brief and address them in order of analytical convenience.

### A.   Challenges to the district court's jurisdiction over § 2241 petition

#### 1. Standing Order 18-3

Mr. Bradin argues that the district court lacked jurisdiction to rule on his § 2241 petition because at the time he was housed at the Leavenworth Detention Center, the Center recorded attorney-client meetings between federal detainees and their attorneys, and the United States Attorney's Office in Kansas City, Kansas, obtained some of those recordings. Based on an assumption that the Center recorded his communications with counsel, Mr. Bradin contends that the District of Kansas's

---

[2] The USPC elected not to file a response brief, so Mr. Bradin's opening brief is the sole brief on appeal.

4

Standing Order No. 18-3 required the district court to transfer his § 2241 case to Chief Judge Julie Robinson, and its failure to do so deprived the court of jurisdiction. We disagree.

The District of Kansas issued Standing Order No. 18-3 to address possible postconviction Sixth Amendment violations caused by the U.S. Attorney's Office's access to the recorded meetings, as described in *United States v. Carter*, 429 F. Supp. 3d 788 (D. Kan. 2019), *vacated in part by United States v. Carter*, No. 16-20032-02-JAR, 2020 WL 430739 (D. Kan. Jan. 28, 2020). In relevant part, Standing Order No. 18-3 provides:

> [T]he Court appoints the Federal Public Defender to represent any defendant from the District of Kansas who may have a post-conviction Sixth Amendment claim based on the recording of in-person attorney-client meetings or attorney-client phone calls by any holding facility housing federal detainees within this District. The FPD is appointed to review potential cases regardless of whether the FPD represented the defendant in earlier District Court proceedings. . . . [T]he FPD is authorized to raise any other claims in the interest of the defendant.

D. Kan. Standing Order No. 18-3 (July 17, 2018). In *Carter*, Chief Judge Robinson ordered that the 28 U.S.C. § 2255 cases the FPD had by then filed pursuant to Standing Order No. 18-3 be reassigned to her:

> The numerous § 2255 petitions filed to date incorporate the record and evidence from the . . . investigation [in this case] and have many issues common to all litigants. Accordingly, in the interest of judicial economy, and to avoid further unnecessary cost and delay, the Court reassigns the pending § 2255 habeas cases filed by the FPD pursuant to Standing Order 18-3 to the undersigned, to the extent they are not already pending before this Court, for determination of the merits of petitioners' Sixth Amendment claims and the Government's defenses consistent with this opinion.

*Carter*, 429 F. Supp. 3d at 902. Chief Judge Robinson further ordered that all "pending § 2255 cases filed pursuant to Standing [Order No.] 18-3 or otherwise raising Sixth Amendment claims related to [the *Carter*] case" be reassigned to her. *Id.* at 904.

Standing Order No. 18-3 and *Carter* concern only transfer of *§ 2255* petitions raising Sixth Amendment claims related to the practices described in the *Carter* case. Nothing in Standing Order No. 18-3 or *Carter* mandates transfer of any *§ 2241* cases to Chief Judge Robinson. But even if they did, Mr. Bradin does not explain, nor do we see, how the district court's failure to transfer his case to Chief Judge Robinson deprived the court of jurisdiction.

## 2. Right to hire counsel

Mr. Bradin also argues that although he represented himself, he did not waive his Sixth Amendment right to hire counsel, and therefore the district court lacked jurisdiction under *Johnson v. Zerbst*, 304 U.S. 458 (1938), *overruled on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981). We are not persuaded. In *Johnson*, the Supreme Court explained that "[t]he Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." *Id.* at 463 (footnote omitted). However, a defendant generally has no right to counsel in a § 2241 proceeding because the Sixth Amendment "right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Consequently, any inability of Mr. Bradin to hire counsel of choice

6

to represent him in his § 2241 proceeding did not divest the district court of jurisdiction over his § 2241 petition. To the extent Mr. Bradin's argument is instead based on his refusal to waive an alleged right to hire counsel in his parole revocation hearing, we consider it irrelevant to the district court's jurisdiction over his § 2241 petition.

**B.     Challenge to disposition of § 2241 petition**

We discern only one challenge to the district court's disposition of the merits of Mr. Bradin's § 2241 petition. Mr. Bradin argued in his petition that deferring his parole revocation hearing until after expiration of his state sentence violated due process. The district court denied relief on this issue, concluding that under *Moody v. Daggett*, 429 U.S. 78 (1976), Mr. Bradin was not entitled to a revocation hearing promptly after the warrant was issued in 1992 because he was confined in state prison pursuant to a valid conviction.

"When reviewing the denial of a habeas petition under § 2241, we review the district court's legal conclusions de novo and accept its factual findings unless clearly erroneous." *al-Marri v. Davis*, 714 F.3d 1183, 1186 (10th Cir. 2013).

On appeal, Mr. Bradin does not address the district court's reliance on *Moody*. He instead relies on *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Cleveland v. Ciccone*, 517 F.2d 1082 (8th Cir. 1975), for the proposition that he had a

constitutional due process right to a reasonably prompt parole revocation hearing after issuance of the 1992 warrant.[3]  We disagree.

In *Morrissey*, the Supreme Court held that due process requires the USPC to hold a parole revocation hearing "within a reasonable time after the parolee is taken into custody."  408 U.S. at 488.  And in *Cleveland*, the Eighth Circuit held "that federal prisoners are entitled to reasonably prompt hearings on federal parole or release violation warrants and that the heretofore frequent practice of deferring such hearings until the expiration of an inmate's intervening sentence violates due process of law."  517 F.2d at 1083.  But the problem for Mr. Bradin is that in *Moody*, the Supreme Court concluded that *Morrissey* does not apply in circumstances similar to those here, and it rejected the position the Eighth Circuit took in *Cleveland*.

In *Moody*, a federal parolee was imprisoned for crimes committed while on parole.  429 U.S. at 80.  The USPC[4] issued a parole violator warrant, but instead of executing it, the USPC lodged it as a detainer with the prison where the parolee was incarcerated for the new crimes.  *Id.*  The Supreme Court held that the parolee had no constitutional right under *Morrissey* to a parole revocation hearing until the USPC executed the parole violator warrant and took him into custody.  *See id.* at 86-87, 89.

_____

[3] Mr. Bradin frames his argument by reference to the district court's order denying his post-judgment motion for modification of his detention order.  In its post-judgment order, the district court discussed the rationale it provided in its order denying relief on the substantive claim that Mr. Bradin now refers to.  We therefore treat his argument as directed at the district court's underlying ruling.

[4] At the time, the USPC was still named the United States Board of Parole. *See Moody*, 429 U.S. at 82.

8

The Court explained: "[I]n holding [in *Morrissey*] that 'the revocation hearing must be tendered within a reasonable time after the parolee is taken into custody,' we established *execution of the [revocation] warrant and custody under that warrant* as the operative event triggering any loss of liberty attendant upon parole revocation." *Id.* at 87 (emphasis added) (brackets and citation omitted) (quoting *Morrissey*, 408 U.S. at 488). Consequently, the USPC "has no constitutional duty to provide [a parolee] an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant." *Id.* at 89. In reaching these conclusions, *Moody* resolved a circuit split, expressly rejecting the approach in *Cleveland* and other cases with similar holdings. *Id.* at 79 n.1. Accordingly, Mr. Bradin's reliance on *Morrissey* and *Cleveland* is misplaced.

Mr. Bradin also complains that although 18 U.S.C. § 4214(c)[5] requires holding a parole revocation hearing within 90 days of execution of the warrant, the USPC did not hold the hearing in his case until 26 years and 260 days later. He contends that § 4214(c) is superior to a regulation the district court cited, 28 C.F.R. § 2.44(b), which provides that the USPC has discretion to lodge a parole violator warrant as a detainer instead of executing it. These arguments fail because by its terms, § 4214(c)'s 90-day time limit is not triggered until a parolee is "retaken by warrant," § 4214(c), and consistent with *Moody*, the USPC did not retake Mr. Bradin by

---

[5] Section 4214(c) provides that an "alleged parole violator who is . . . retaken by warrant under section 4213 . . . shall receive a revocation hearing within ninety days of the date of retaking."

9

warrant until 2018, when it executed the 1992 warrant and took him into federal custody.

## C.     Challenges to miscellaneous rulings

### 1.  Motions for default judgment

Mr. Bradin contends that the district court should have granted his motions for default judgment against respondents because (1) respondents never entered a valid appearance by April 8, 2019; and (2) the Assistant United States Attorneys (AUSAs) representing the USPC signed pleadings with an electronic signature, which the district court should have struck.  The district court ruled that no formal entry of appearance is required under the Rules Governing Section 2254 Habeas Corpus Cases in the United States District Courts (Habeas Rules),[6] the court had not directed one, and the use of an electronic signature complied with the applicable local rule.

We review for an abuse of discretion the district court's denial of a motion for default judgment.  *Harvey v. United States*, 685 F.3d 939, 945 (10th Cir. 2012).  We see none.  First, Federal Rule of Civil Procedure 55(d) provides that "[a] default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court."  Because we have affirmed the district court's conclusion that Mr. Bradin did not

---

[6] Habeas Rule 1(b) provides that "[t]he district court may apply any or all of these rules to a habeas corpus petition" other than a § 2254 petition.  *See also Boutwell v. Keating*, 399 F.3d 1203, 1211 n.2 (10th Cir. 2005) (observing that the district court "acted within its discretion by applying the Section 2254 Rules to [a] § 2241 petition").

establish a right to relief, he is not entitled to default judgment. *See Harvey*, 685 F.3d at 946 (relying on Rule 55(d) as independent and alternative basis for affirming refusal to enter default judgment against federal government).

Second, the district court ordered the USPC to file a response to Mr. Bradin's motions for a subpoena and for release of seized assets by April 8, 2019, the date Mr. Bradin relies on in his argument. The USPC filed the response on that date. That counts as an appearance under the sole authority Mr. Bradin's relies on, *Anderson v. Taylorcraft, Inc.*, 197 F. Supp. 872 (W.D. Pa. 1961), for his contention that the USPC never came into court and submitted to the court's jurisdiction. *See id.* at 874 (explaining that an appearance is "any action on the part of [the] defendant, except to object to the jurisdiction over his person[,] which recognizes the case as in court" (internal quotation marks omitted)). And although *Anderson* said an act is not an appearance if it "in no way recognizes that the cause is properly pending or that the court has jurisdiction, and no affirmative action is sought from the court," *id.* (emphasis and internal quotation marks omitted), that is not the case here. The USPC recognized that the case was properly before the district court when it noted the court had ordered it to file an answer to the petition, the USPC did not contest the court's jurisdiction, and the USPC asked the court for affirmative action—denial of the pending motions.

Third, in contesting the AUSAs' use of an electronic signature that complied with the district court's local rule, Mr. Bradin leans solely on *Becker v. Montgomery*, 532 U.S. 757, 764 (2001), where the Supreme Court ruled that a "typed name[]" does

11

not satisfy Federal Rule of Civil Procedure 11(a)'s requirement of a signature on filed papers. Here, however, we are not dealing with a typed name but an electronic signature. Federal Rule of Civil Procedure 5 requires litigants represented by an attorney to "file electronically," Fed. R. Civ. P. 5(d)(3)(A), and provides that "[a] filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature," Fed. R. Civ. P. 5(d)(3)(C). The AUSA's use of an electronic signature in no way entitled Mr. Bradin to a default judgment.[7]

### 2. Extension of time

Mr. Bradin argues that the district court erred in granting the USPC's request for an extension of time to file its answer to the § 2241 petition, which it filed on April 12, 2019. The USPC stated it needed a 30-day extension because counsel in Washington, D.C. was assisting in preparing the answer and needed more time to receive and review the trial record and to review Mr. Bradin's upcoming parole revocation hearing. The USPC represented that the hearing was to occur on April 15, three days after it filed the motion for an extension of time. The USPC also relied on delays in preparing to transport Mr. Bradin for the hearing that were attributable to

---

[7] The district court did not require the other named respondent, Warden Linda Thomas, to answer the petition, reasoning that Mr. Bradin's contentions about the conditions of his confinement were not properly before the court in a § 2241 proceeding. Mr. Bradin has not explained how a default judgment against the warden would have entitled him to relief on his § 2241 petition given the USPC's opposition to it.

12

his medical issues. The district court summarily granted the motion for good cause shown on the same day it was filed.

Mr. Bradin then filed three identical motions for monetary sanctions, arguing that the extension was unwarranted because on September 4, 2018, he had filed a different § 2241 petition in a different court, and therefore by the time the USPC filed its motion for an extension of time, it had already had over 225 days to prepare for the instant § 2241 petition. He also claimed the USPC erroneously stated that a parole hearing was scheduled.[8] The district court denied the motions for sanctions, noting that the motion for extension of time was the USPC's first such motion, and that 28 U.S.C. § 2243's time limit for filing an answer (three days plus a maximum extension of 20 days) is subordinate to Habeas Rule 4, which contains no fixed time requirement but instead gives district courts considerable discretion in setting deadlines for responses to habeas petitions.

We review a district court's ruling on an extension of time for abuse of discretion. *Rachel v. Troutt*, 820 F.3d 390, 394 (10th Cir. 2016). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable," or where it "exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand."

---

[8] Mr. Bradin filed an interlocutory appeal of the order granting an extension of time. The district court denied certification of the order for an immediate appeal, and we dismissed that appeal for lack of jurisdiction.

*Carter v. Bigelow*, 787 F.3d 1269, 1278 (10th Cir. 2015) (internal quotation marks omitted).

On appeal, Mr. Bradin claims the extension request was part of a conspiracy with the district judge to allow more time for the judge to appoint the FPD to represent him, as evidenced by the fact that the AUSA provided an incorrect date for his transfer from Leavenworth to Oklahoma City for his parole revocation hearing. The district court addressed this conspiracy allegation in denying Mr. Bradin's post-judgment motion for modification of his detention order, finding the allegation to be "bare" and "lack[ing] any factual support."  R. (No. 19-3190), Vol. 2 at 367. We agree.  We also consider any error in the AUSA's representations regarding the parole hearing as immaterial to whether the USPC showed good cause for an extension of time.  The district court could permissibly base a finding of good cause on the other reasons stated in the USPC's motion, namely, the need for Washington, D.C. counsel to review the instant petition and assist in preparing an answer to it. We therefore conclude that the district court did not abuse its discretion in granting the extension of time.

### 3.  Release of funds

Mr. Bradin suggests in passing that the district court erred in denying his motions for an order directing the Social Security Administration to release benefits it had been holding so that he could hire counsel of choice.  The district court denied the motions for lack of jurisdiction because his cause of action lay with the Social Security Administration, not against respondents in his § 2241 proceeding.

14

Mr. Bradin wholly fails to explain why he thinks the district court's rulings were wrong; instead he merely advances a "generalized assertion of error," which "disentitle[s] him to [appellate] review" of this issue. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (internal quotation marks omitted).

### 4. Release pending appeal

Mr. Bradin also complains that the district court lacked jurisdiction over his post-judgment request for modification of his detention order to allow him to be released pending appeal. This issue is moot because we have now decided his appeal and cannot grant the release pending appeal. *See Phelps v. Hamilton*, 122 F.3d 885, 891 (10th Cir. 1997) (explaining that the "inability to grant effective relief renders [an] issue moot"). Our decision today also renders moot his renewed request that we grant his release to a halfway house during the pendency of this appeal.

### D.    Failure to challenge denial of TRO/PI motion

As mentioned earlier, Mr. Bradin noticed an appeal (No. 19-3093) from the district court's order denying his motion for a TRO and PI, but he has advanced no argument that the district court erred in its ruling. He has therefore waived appellate review of that ruling.[9] *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984

---

[9] Indeed, if Mr. Bradin had advanced arguments challenging solely the denial of the TRO, we would lack jurisdiction to consider them. *See Office of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.*, 473 U.S. 1301, 1304-05 (1985) (concluding that circuit courts lack jurisdiction to review the denial of a TRO that does not amount to a *de facto* denial of a PI); *Populist Party v. Herschler*, 746 F.2d 656, 661 (10th Cir. 1984)

15

n.7 (10th Cir. 1994) (explaining that issue not raised in opening brief is waived).

Accordingly, we affirm the denial.

### III.  PENDING MOTIONS

**A.  Motion for appointment of counsel**

Mr. Bradin has filed a motion for appointment of pro bono counsel on appeal, invoking the Criminal Justice Act (CJA), 18 U.S.C. § 3006A.  We deny the motion.

As we noted earlier, the district court appointed the FPD to represent Mr. Bradin.  The court based its appointment on Mr. Bradin's indigence and the FPD's indication that Mr. Bradin had contacted the FPD and requested representation.  On April 23, 2019, six days after the appointment, Mr. Bradin filed a pro se motion to withdraw it, explaining that he believed the appointment was an illegal attempt to deny him his Sixth Amendment right to hire counsel of his choice.  On May 7, while the FPD still represented Mr. Bradin, he filed a pro se notice of appeal in No. 19-3093.  Also on May 7, the district court ordered Mr. Bradin to inform the court whether he wanted to maintain the FPD as his counsel, because the court found it unclear whether his motion to withdraw the appointment was conditioned on his success on various motions the court denied in the same (May 7) order.  The court warned him that it would withdraw the appointment if he failed to respond by May 31.  On May 23, this court continued the appointment of the FPD to represent Mr. Bradin in appeal No. 19-3093.  On June 4, after Mr. Bradin failed to

_____

(explaining that, subject to certain exceptions not readily apparent here, the "denial of a temporary restraining order is not appealable").

respond to the district court's May 7 order regarding continued appointment of the FPD, the district court withdrew the appointment in the pending district court action. On September 3, after the district court entered final judgment on the § 2241 petition, Mr. Bradin filed a pro se notice of appeal in No. 19-3191. On October 10, the FPD filed a motion to withdraw as counsel in No. 19-3093. Attached to the motion was Mr. Bradin's signed acknowledgment of the motion to withdraw, where he stated that exceptional circumstances prevented the FPD from representing him and that the FPD's representation was inconsistent with his wish to hire counsel of his choosing. On October 11, we granted the motion to withdraw.

As this history shows, Mr. Bradin has already affirmatively rejected appointed counsel. We therefore deny his motion for what is essentially *re*-appointment of counsel under § 3006A. Although Mr. Bradin notes that "[p]rivate attorneys shall be appointed in a substantial proportion of [CJA] cases," § 3006A(a)(3), he has no right to a private attorney instead of the FPD. In fact, he has no right to appointed CJA counsel at all. Appointment of counsel pursuant to § 3006A in a § 2241 proceeding is a matter of discretion. *See* § 3006A(a)(2)(B) ("Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation *may be* provided for any financially eligible person who . . . is seeking relief under section 2241[.]" (emphasis added)).

## B. Motions for sanctions

Mr. Bradin has filed a motion and an amended motion for monetary sanctions based on (1) allegations that his conversations with counsel were recorded while he

was detained at the Leavenworth Detention Center and that the AUSAs used the recordings in connection with his parole revocation hearing; (2) the AUSAs' alleged failure to enter a valid appearance; and (3) the AUSAs' conspiracy with the district judge to delay proceedings until the court could appoint the FPD. We deny these motions because the allegations about the recordings of conversations with counsel are conclusory and untested, and we have rejected the other bases he advances.

## IV.  CONCLUSION

In No. 19-3093, we affirm the district court's denial of Mr. Bradin's motion for a TRO/PI. In No. 19-3190, we affirm the district court's judgment. We deny Mr. Bradin's motion for appointment of counsel, motion for sanctions, and amended motion for sanctions.

Entered for the Court


Jerome A. Holmes
Circuit Judge